IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF TEXAS
DALLAS  DIVISION

|  |  |  |
|---|---|---|
| PHILIP A. MURPHY, Jr.<br>SANDRA R. NOE, and<br>CLAIRE M. PALMER,<br>Individually, and as Representatives of plan<br>participants and plan beneficiaries of<br>VERIZON's PENSION PLANS<br>involuntarily re-classified and treated as<br>transferred into IDEARC's PENSION PLANS,<br><br>　　　Plaintiffs,<br><br>vs.<br><br>VERIZON COMMUNICATIONS, INC.,<br>VERIZON EMPLOYEE BENEFITS COMMITTEE,<br>VERIZON PENSION PLAN FOR NEW YORK<br>　AND NEW ENGLAND ASSOCIATES,<br>VERIZON MANAGEMENT PENSION PLAN,<br>IDEARC EMPLOYEE BENEFITS COMMITTEE,<br>IDEARC PENSION PLAN FOR<br>　MANAGEMENT EMPLOYEES, and<br>IDEARC PENSION PLAN FOR<br>　COLLECTIVELY BARGAINED EMPLOYEES,<br><br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. **3:09-cv-2262** |

## <u>COMPLAINT</u>
### for  PROPOSED  CLASS  ACTION  RELIEF  UNDER  ERISA

　　　Plaintiffs PHILIP A. MURPHY, JR., SANDRA R. NOE, and CLAIRE M. PALMER, by and through their counsel, file this Complaint:

### <u>PRELIMINARY STATEMENT</u>

　　**1.**　　Section 104(b)(4) of the Employee Retirement Income Security Act ("ERISA") provides that the plan administrator must, "upon written request of any participant or beneficiary, furnish a copy of . . . instruments under which the plan is established or operated."

29 U.S.C. § 1024(b)(4).   Further, ERISA Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(B), as

supplemented by current Federal Regulations, provides that if the administrator fails to comply

with such a request within 30 days, the court is authorized to award damages to such participant

or beneficiary in the amount of up to $110 a day from the date of such failure or refusal, or order

other such relief as the court deems proper.   Plaintiffs for themselves and the proposed class

they seek to represent have attempted to gather pension plan information related to their

involuntary reclassification and treatment as being transferred from the pension rolls of Verizon

Communications, Inc. into the pension rolls of Idearc Media LLC, a subsidiary of Idearc, Inc.

(hereinafter the entities are collectively referred to as "Idearc.").   For many months, Defendant

plan fiduciaries and administrators have failed or refused to comply with Plaintiffs' written

demands for various documents under which the pension plans are established, operated or

administered.

Plaintiffs pursued  a class-wide internal administrative claim challenging their unwilling

transfer from the more financially secure Verizon pension plans into pension plans sponsored by

Idearc, a company in bankruptcy proceedings.  The requested information not revealed by

Defendants undermined and thwarted the internal claims process.  Moreover, Idearc chose not to

respond to the merits of Plaintiffs' administrative claim.  Instead, more than six months after

receiving Plaintiffs' class-wide claim, Idearc reported back to Plaintiffs that "ERISA does not

recognize such a claim."  Also, because Verizon pension plan administrators did not follow,

Federal Regulations and pension plan deadlines, Plaintiffs' class-wide internal administrative

claim is deemed exhausted.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction of the claims for relief based upon the civil enforcement provisions of ERISA, 29 U.S.C. §§ 1132(a)(1)(A), 1132(a)(2), 1132(a)(3), 1132(e)(1) and 1132(f), and upon 28 U.S.C. §§ 1331.

3.      Relief is also sought under 28 U.S.C. §§ 2201 and 2202, granting any district court of the United States, in a case of actual controversy within its jurisdiction, the power to declare the rights and other legal relations of any interested party seeking such declaration and to grant further necessary or proper relief based upon a declaratory judgment or decree.

4.      Venue of this action lies in the Northern District of Texas, pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), in that acts complained of herein occurred within this District and the subject pension benefit plans are administered in this District.  The Dallas Division of this District is a convenient forum as demonstrated by Defendant Verizon Employee Benefits Committee's representations to this Court that "[r]esponsibility for day-to-day administration of the Plan (including recoupment of overpayments) has been delegated by the Verizon Employee Benefits Committee to the pension administration department within the Verizon human resources department in Coppell and Irving, Texas." *Verizon Employee Benefits Committee v. Jaeger*, (Not Reported in F.Supp.2d) 2006 WL 2880451 (N.D. TX September 28, 2006).

## THE PARTIES

5.      Named Plaintiff PHILIP A. MURPHY, Jr. ("MURPHY") is a United States citizen and resident of Mills, Massachusetts.   In December 1996, he retired from a predecessor of Defendant Verizon Communications, Inc.  Within a couple of months after his retirement

date, MURPHY began receiving a service pension in the form of a 100% joint and survivor monthly annuity.

6.    In November 2006, MURPHY was a "participant," as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), of the VERIZON PENSION PLAN FOR NEW YORK AND NEW ENGLAND ASSOCIATES, and he was involuntarily reclassified as a participant of the IDEARC PENSION PLAN FOR COLLECTIVELY BARGAINED EMPLOYEES.  However, MURPHY  maintains status as a participant with a colorable claim to payment of pension plan benefits from the aforesaid Verizon pension plan.

7.    Named Plaintiff  SANDRA R. NOE ("NOE") is a United States citizen and resident of Ipswich, Massachusetts.   On or about April 7, 1995, she retired from a predecessor of Defendant Verizon Communications, Inc. and began receiving a service pension in the form of a single life monthly annuity.

8.    In November 2006, NOE was a "participant," as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), of the VERIZON PENSION PLAN FOR NEW YORK AND NEW ENGLAND ASSOCIATES, and she was involuntarily reclassified as a participant of the IDEARC PENSION PLAN FOR COLLECTIVELY BARGAINED EMPLOYEES.  However, NOE maintains status as a participant with a colorable claim to payment of pension plan benefits from the aforesaid Verizon pension plan.

9.    Named Plaintiff CLAIRE M. PALMER ("PALMER") is a United States citizen and resident of West Newton, Massachusetts.  On or about April 1, 1995, she retired from a predecessor of Defendant Verizon Communications, Inc. and began receiving a service pension in the form of a single life monthly annuity.

10.    In November 2006, PALMER was a "participant," as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), of the VERIZON MANAGEMENT PENSION PLAN and she was involuntarily reclassified as a participant of the IDEARC PENSION PLAN FOR MANAGEMENT EMPLOYEES.  However, PALMER maintains status as a participant with a colorable claim to payment of pension plan benefits from the aforesaid Verizon pension plan.

11.    Defendant VERIZON COMMUNICATIONS, Inc. ("Verizon") is a Delaware corporation with operations within this District.  Verizon is the plan sponsor of its pension plans.  Within the Dallas Division of this District, Verizon maintains an H.R. Department charged with administering all of Verizon's welfare plans and pension plans.

12.    Defendant VERIZON EMPLOYEE  BENEFITS COMMITTEE (hereinafter "Verizon EBC") is, pursuant to ERISA §§ 3(21) and 3(16), 29 U.S.C. §§ 1002(21) and 1002(16), the named "fiduciary" and "administrator" of Verizon's several pension plans, including the pension plans named as necessary parties herein.  Verizon EBC is also the named fiduciary and administrator of numerous Verizon welfare benefit plans, and as such owes fiduciary duties to retiree who are either participants in those welfare plans or have colorable claims to payment of Verizon's welfare benefits.  Verizon EBC has delegated day-to-day administration of Verizon's employee benefit plans to Verizon's human resources department including personnel in the offices located within this District at 600 Hidden Ridge, Irving, Texas.  Defendant is a body appointed by Verizon, and, as a body, performs certain designated fiduciary and administrative functions under Verizon's employee benefit plans.  For example, as administrator and fiduciary of Verizon's pension plans, Verizon EBC has the discretionary authority to exercise control over disbursements of assets in the pension plans.

13.    At all times mentioned herein, various unnamed Verizon employees and in-house counsel were Verizon EBC's agents, and said defendant has ratified and approved the acts of its agents.

14.    Defendant VERIZON MANAGEMENT PENSION PLAN is an "employee pension benefit plan" pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).   The plan is a defined pension benefit plan.  The plan is named as a party defendant pursuant to Rule 19(a), Fed.R.Civ.P.

15.    Defendant VERIZON PENSION PLAN FOR NEW YORK AND NEW ENGLAND ASSOCIATES is an "employee pension benefit plan" pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The plan is a defined pension benefit plan.  The plan is named as a party defendant pursuant to Rule 19(a), Fed.R.Civ.P.

16.    Defendant IDEARC EMPLOYEE BENEFITS COMMITTEE (hereinafter "Idearc EBC") is, pursuant to ERISA §§ 3(21) and 3(16), 29 U.S.C. §§ 1002(21) and  1002(16), the named "fiduciary" and "administrator" of Idearc's several pension plans.   Defendant is comprised of Idearc officers and administers the pension plans within this District at 2200 West Airfield Drive, D/FW Airport, Texas.   Defendant is a body appointed by Idearc and, as a body, performs certain designated fiduciary and administrative functions under Idearc's pension plans.

17.    At all times mentioned herein, various unnamed Idearc employees and in-house counsel were Idearc EBC's agents, and said defendant has ratified and approved the acts of its agents.

18.    Defendant IDEARC PENSION PLAN FOR MANAGEMENT EMPLOYEES is an "employee pension benefit plan," pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

The plan is a defined pension benefit plan.  The plan is named as a party defendant pursuant to Rule 19(a), Fed.R.Civ.P.

**19.** Defendant IDEARC PENSION PLAN FOR COLLECTIVELY BARGAINED EMPLOYEES is an "employee pension benefit plan" pursuant to ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).  The plan is a defined pension benefit plan.    The plan is named as a party defendant pursuant to Rule 19(a), Fed.R.Civ.P.

## FACTS

**20.** Idearc, Inc. reports in a Form 10-K filed with the United States Securities and Exchange Commission that the company "was formed as a Delaware corporation in June 2006 in anticipation of the spin-off from Verizon." [1]

**21.** In early October, 2006, Verizon announced that its Board of Directors had approved the proposed spin-off of its Information Services division (i.e., domestic print and internet yellow pages directories publishing operations) to its stockholders as a separate, publicly traded company named Idearc, Inc.

**22.** When the October 2006 announcement was made, Plaintiffs were each previously retired from a Verizon sponsored pension plan and each was receiving welfare benefits and other incidental retiree benefits provided by Verizon.

**23.** Verizon's proposed spin-off was completed on or about Nov. 17, 2006.

**24.** Accordingly, Verizon pension plan fiduciaries had at least several months to contemplate the mechanics, requirements and consequences of reclassifying and involuntarily

---

[1]    Idearc, Inc. Form 10-K for year 2007 at p. 1.

transferring retirees to Idearc.  Verizon pension plan fiduciaries did not seek the opinion of an

independent pension plan fiduciary to guide them in the decision whether or not to transfer

retired plan participants into the spin-off entity, Idearc.

     **25.**     In preparation for the planned spin-off, Verizon and Idearc entered into an

Employee Matters Agreement ("EMA"), executed on November 17, 2006 by a Verizon officer

and an Idearc officer.

     **26.**     The EMA is neither a governing pension plan document nor an amendment to

Verizon's pension plans.  There are no terms within Verizon's pension plans expressly making

the EMA part of the pension plans and there is no incorporation of any EMA.  The November

17, 2006 EMA was neither executed by the Verizon Board of Directors nor signed by the "most

senior Human Resources officer of Verizon," the person to whom the Verizon Board has

delegated authority to amend Verizon's pension plans.   Likewise, there is no evidence that

Verizon's Board, either by duly adopted written resolutions or by unanimous written consent,

delegated the power to amend Verizon's pension plans to EVP John W. Dierckson, the only

Verizon officer who executed the EMA.   Therefore, the EMA fails to follow the amendment

procedure specified in Verizon's pension plans.  (See, e.g., Section 11.2 appearing on page 103

of the Verizon Management Pension Plan).

     **27.**     In addition, neither Defendant Verizon EBC and Defendant Idearc EBC treated

the EMA as a document under which the pension plans were established or operated, a document

required to be disclosed under ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4).   In a March 6,

2009 letter sent in response to Plaintiffs' document demands Verizon's Assistant General

Counsel Marc Schoenecker, counsel for Defendant Verizon EBC, professed, in part, that

"ERISA Section 104(b) does not require us to produce the EMA."

28.     When the spin-off transaction occurred as of November 17, 2006, there were no Verizon pension plan provisions or amendments which segregated certain pension assets or identified certain pension liabilities as being associated with either a single Plaintiff or group of pension plan participants.

29.     During November 2006, Verizon transferred hundreds of millions of dollars in pension assets to Idearc, and there were no contemporaneous pension plan terms that identified and traced the transferred monies to liabilities for payment of pension benefits to particular plan participants.

30.     Since Verizon's pension plans were over funded during November 2006, the transferred assets are deemed excess or surplus monies not associated with any liabilities.

31.     As part of the spin-off transaction, Verizon selected Plaintiffs and over 2,000 other retired plan participants in Verizon's pension plans for reclassification and to be treated as transferred into Idearc's pension plans.

32.     As of approximately November 17, 2006, Verizon involuntarily reclassified Plaintiffs and all other similarly situated retiree plan participants from being on Verizon's pension rolls into being on Idearc's pension rolls.

33.     In November 2006, Plaintiffs NOE and PALMER and all other similarly situated retirees were vested in their Verizon sponsored pension plans and no one obtained their consent to be either reclassified or transferred out of the better funded and well maintained Verizon pension plans into Idearc sponsored pension plans.

34.     Several months later, by letter dated February 15, 2007, Verizon notified

Plaintiffs that as a result of the spin-off, Idearc assumed both the responsibility and obligations for the benefit plans of its employees "as well as retirees and other former employees whose final Verizon service was with Verizon Information Services (VIS) or an associated company."

35.    However, in November 2006, when Verizon involuntarily reclassified Plaintiffs and the other retirees and treated them as being transferred to Idearc's pension plans there were no existing plan terms giving the plan sponsor or any other entity the authority to make that change in status for the retirees.   Verizon's actions were contrary to the terms of the governing pension plans.

36.    As of November 17, 2006, the applicable Verizon pension plans each contained a specific provision allowing for mergers and consolidations of the pension plans and for transfer of assets and liabilities into another plan.  (See Section 11.3 of the Verizon Management Pension Plan and Section 20.6 of the Verizon Pension Plan for New York and New England Associates.).  However, as of November 17, 2006 , there were no existing terms that either specifically allowed either a spin-off or involuntary transfer of retired pension plan participants into Idearc's newly formed pension plan.  In addition, as of November 17, 2006 and before December 22, 2006, there were no existing terms that identified, allowed or directed specific assets or liabilities to be removed from Verizon's pension plans and master trust and transferred into Idearc's pension plans and master trust.

37.    After the fact, on December 22, 2006, Verizon executed and adopted pension plan amendments containing new plan terms purportedly permitting the transfer of assets, liabilities and retirees into Idearc's pension plans and master trust.  (See Schedule XLV of the Verizon Management Pension Plan and Section 5.11, as amended, of the Verizon Pension Plan of New

York and New England Associates).   Verizon attempted to make the *post hoc* terms retroactive to November 17, 2006.  The retroactive effect of the December 22, 2006 plan amendments violated preexisting terms of Verizon's pension plans and deprived Plaintiffs and other retirees of rights existing under Verizon's pension plans prior to the amendments.

**38.**    At least during the period November 17, 2006 through December 22, 2006, Plaintiffs and putative class members remained entitled to receive their vested service pension benefits payable out of Verizon's pension plans.  However, during that time period, no Verizon pension plan benefits were paid to either Plaintiffs or any of the other retirees selected for reclassification and involuntary transfer into Idearc's pension plans.

**39.**    Plaintiffs contend that Verizon pension plan fiduciaries beached ERISA duties owed to Plaintiffs and all other putative class members.

**40.**    The involuntary reclassification and transfer of Plaintiffs and other retirees into Idearc's pension plans proved not to be in their best interests.

**41.**    Less than two years after the spin-off transaction occurred, Idearc began to endure financial troubles and the company began cutting back retiree benefits provided to Plaintiffs and other retirees who had been transferred from Verizon.   Plaintiffs and all other putative class members have suffered loss of retiree welfare and incidental benefits not suffered by Verizon's other retirees who were not reclassified and involuntarily transferred to Idearc.

**42.**    Plaintiffs reasonably developed concerns about the financial well-being of Idearc's pension plans.

**43.**    By letter dated August 13, 2008, Plaintiffs NOE and PALMER requested Defendant Idearc EBC to produce, *inter alia*, Form 5500s and "[a]ll other documents created

*since January 2006* under which the pension plans and the master trust are established and operated within the meaning of ERISA Section 104(b)(4)." However, Defendant Idearc EBC failed to timely produce some responsive documents and some responsive documents have not been produced.

44.     On February 4, 2009, all Plaintiffs submitted a written class-wide administrative claim to both Defendant Verizon EBC and Defendant Idearc EBC seeking, *inter alia*, to reverse the reclassification and subsequent transfer of retirees from Verizon's pension plans into idearc's pension plans.

45.     In their February 4, 2009 dated letter Plaintiffs made numerous ERISA Section 104(b)(4) document requests to both Defendant Verizon EBC and Defendant Idearc EBC.

46.     In their letter dated February 4, 2009, Plaintiffs requested Defendant Verizon EBC and Defendant Idearc EBC to disclose information so that Plaintiffs could determine whether or not Verizon transferred  sufficient funds to support Idearc's pension obligations to the transferred retirees.  In their February 4, 2009 letter Plaintiffs requested said defendants to produce "all documents related to the establishment and operation of the Idearc pension plans, including:  **1)**  summaries and estimates of costs of providing benefits for transferred retirees;  **2)** summaries and estimates of savings to Verizon by transferring retirees;   **3)**  summaries and estimates of administrative costs associated with administering pension benefits for all transferred retirees;  and  **4)** actuarial studies, funding projections, estimates and final reports concerning pension assets expected to be transferred and confirming the transfer of assets to Idearc for payment of pension liabilities."

47.     In their letter dated February 4, 2009, Plaintiffs requested Defendant Verizon

EBC and Defendant Idearc EBC to disclose the identities of the plan administrators who met and made the decisions to transfer Plaintiffs and other retirees over to Idearc, and they requested said defendants to produce the following documents concerning those meetings and decisions: **"5)** notices, agenda, documents presented or distributed at or in preparation for such meetings, and minutes of such meetings, including any summaries or notes of such meetings; **6)** all employee matters agreements; **7)** reports discussing, explaining and describing any curtailment gain or settlement gain on Verizon's financial statements as a result of the transfer of retirees; **8)** legal opinions with respect to Verizon plan administrators' decisions to transfer retirees, including all related communications from legal counsel advising plan fiduciaries and plan administrators; and **9)** reports, opinions by independent fiduciaries and consultants with respect to Verizon plan administrators' decision to transfer retirees."

48.     In their letter dated February 4, 2009, Plaintiffs requested Defendant Verizon EBC and Defendant Idearc EBC to disclose whether the Idearc pension plans have been qualified under the Internal Revenue Code and applicable Treasury Department regulations and they requested said defendants to produce: **"10)** documents reflecting application made to the IRS for approval of the transfer of retirees and pension assets and qualification of the pension plans, as well as letters and responses by the IRS."

49.     In their letter dated February 4, 2009, Plaintiffs requested Defendant Verizon EBC and Defendant Idearc EBC to disclose additional information with respect to the administration of the Idearc pension plans, and they requested said defendants to produce: "**11)** all amendments and appendices created and adopted *since September 2008* to the controlling/ governing plan documents for the pension plans and the master trust, together with all summary

of material modifications from *September 2008* to the present;   **12)**  all resolutions and actions *since September 2008* by the Idearc Board of Directors, the Idearc Plan Design Committee, the Idearc Employee Benefits Committee and Idearc Pension Plan administrators concerning the pension plans and the trusts;   and  **13)**  all other documents created *since September 2008* under which the pension plans and the master trust are established and operated within the meaning of ERISA Section 104(b)(4), including asset allocation policy/guidelines and investment policy/guidelines and proxy voting guidelines."

50.    Neither Defendant Verizon EBC nor Defendant Idearc EBC fully complied with all of Plaintiffs' aforesaid ERISA Section 104(b)(4) document requests and, to date, much of the requested information has not been disclosed to Plaintiffs.  The failure or refusal to disclose the requested information and documents was a breach of ERISA fiduciary duty owed to Plaintiffs.

51.    On March 31, 2009, Idearc and its domestic subsidiaries filed within this District voluntary petitions for reorganization under Chapter 11 of the U.S. Bankruptcy Code.  The bankruptcy filing does not stay any civil actions against either Defendant Idearc EBC or any of Idearc's pension plans.

52.    ERISA Section 502(a)(3) authorizes plan participants to bring a civil action  "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."  29 U.S.C. § 1132(a)(3);  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-57 (1993).

## Available Administrative Procedures Deemed Exhausted

53.    By letter dated February 4, 2009, Plaintiffs' submitted a proposed class-wide

administrative claim to both Defendant Verizon EBC and Defendant Idearc EBC.

54.    Defendant Verizon EBC refused to treat Plaintiffs' internal administrative claim as a class-wide claim.  By letter dated February 6, 2009, Verizon's Assistant General Counsel Marc Schoenecker, counsel for Defendant Verizon EBC, professed that "[t]he Verizon plan administrator does not recognize class-wide ERISA administrative claims."

55.    Pursuant to the terms of Verizon's pension plans, the plan administrators were required to render a decision within 90 days of receipt of Plaintiff's February 4, 2009 administrative claim unless an extension of time was requested due to "special circumstances requiring the extension."  (See, e.g., Section 9.13(a) appearing on page 99 of the Verizon Management Pension Plan).

56.     Verizon plan administrators did not timely render a decision within 90 days and there were no special circumstances requiring any extension of time.

57.    By letter dated July 31, 2009, the Verizon Claims Review Unit, the designated initial claim administrator for Verizon's pension plans, fully denied Plaintiffs' proposed class-wide administrative claim.

58.    By letter dated September 15, 2009, Plaintiffs' appealed the denial of their proposed class-wide administrative claim.  The internal appeals letter was timely received by the Verizon Claims Review Committee (VCRC), the entity Defendant Verizon EBC assigned responsibility for deciding appeals under Verizon's pension plans.

59.    The VCRC is required, pursuant to the rules in the Verizon pension plans, to process an appeal within 60 days after it is received.   For instance, the Verizon Management Pension Plan states the VCRC's decision "shall be issued within a period of time not exceeding

60 days after receipt of the request for review;  except that such period of time may be extended, if special circumstances (including, but not limited to, the need to hold a hearing) should require, for an additional 60 days commencing at the end of the initial 60-day period.  Written notice of such an extension shall be provided to the claimant before the expiration of the initial 60-day period and shall indicate the special circumstances requiring the extension and the date by which the decision on review is expected to be rendered."  (emphasis added.)  (See Section 9.13(b) appearing on page 100 of the Verizon Management Pension Plan, restated as of January 1, 2002).

      **60.**     On November 13, 2009, the VCRC sent Plaintiffs' counsel an unsigned letter unilaterally declaring there would be an extension of time.  However, in the unsigned letter, the VCRC indicated no "special circumstances."

      **61.**     At no time prior to November 14, 2009 or 60 days after receiving Plaintiffs' September 15, 2009 appeal letter did Defendant Verizon EBC or any of its agents, including VCRC, request an extension of time due to special circumstances or the need to hold a hearing.

      **62.**     Defendant Verizon EBC and its VCRC did not timely render a decision by November 14, 2009, within 60 days after receipt of the Plaintiffs' September 15, 2009 letter requesting administrative review, and there were no special circumstances to justify an extension of time in order to make a final decision with respect to MURPHY's, NOE's and PALMER's administrative claims.

      **63.**     Defendant Verizon EBC and its VCRC failed to provide Plaintiffs with a full and fair review because it did not comply with the claim procedures and deadlines required by the Federal Code of Regulations, 29 C.F.R. § 2560-503-1.  In addition, by not producing documents

and information Plaintiffs deem relevant to their class-wide administrative claim, Defendant

Verizon EBC effectively made Plaintiffs' internal appeals procedure futile.

64.    29 C.F.R. § 2560.503-1 dictates a claim be deemed exhausted if a plan does not

comply with the Federal Regulations concerning administrative remedies.   Because Defendant

Verizon EBC, acting through the VCRC, did not comply with Federal Regulations and did not

comply with pension plan rules for rendering a decision within 60 days, Plaintiffs' administrative

remedies were deemed exhausted as of the time they filed this Complaint.

65.    Neither Verizon's pension plans nor Idearc's pension plans provide

administrative procedures or remedies which would afford Plaintiffs and the proposed class

members the plan-wide relief requested herein.

66.    There is no effective internal administrative claims process within either

Verizon's pension plans or Idearc's pension plans to challenge and reverse the involuntary

reclassification and transfer of Plaintiffs and other retirees from Verizon's pension plans into

Idearc's pension plans.  Any such internal claims action to pursue class-wide relief is futile, a

meaningless exercise.

67.    It was folly for Plaintiffs to try in good faith to pursue their class-wide

administrative claims before Defendant Idearc EBC since said defendant took the position that

"ERISA does not recognize such a claim."  Likewise, it would be folly for any other

involuntarily transferred plan participants to pursue a non-existent internal claims process under

Idearc's pension plans to redress any violations of ERISA's fiduciary duty provisions.

68.    It would be folly to require any of the putative class members to pursue the same

requested administrative relief, as Plaintiffs gave notice that their claim should be treated as a

demand on behalf of all other similarly situated retirees and their beneficiaries.

69.    Neither Verizon's pension plans nor Idearc's pension plans have a written procedure to address either an individual or class-wide claim for violation of ERISA's fiduciary duty provisions.

70.    Since the administrative claims process was deemed exhausted, Plaintiffs were permitted to go forward with their ERISA Section 502(a)(1)(B) claims, and this action under ERISA has been timely filed.

**FIRST CLAIM FOR RELIEF**
**(Against Both Defendant Verizon EBC and Defendant Idearc EBC**
**to Recover Penalty for Failure to Provide Requested Plan Documents)**

71.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 70, inclusive, as if they were fully set forth herein.

72.    ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4), required both Defendant Verizon EBC and Defendant Idearc EBC, as pension plan administrators, to honor within 30 days a written request of any participant or beneficiary for a copy of any "instrument under which the [employee benefit plan and trust] is established or operated."  Said defendants did not fully comply with Plaintiffs' ERISA document requests.

73.    By way of example, Plaintiffs requested production of the pension plan's investment policy guidelines because those documents constitute an "instrument" under which the pension plan is "established or operated," within the meaning of ERISA Section 104(b)(4).

74.    Despite Plaintiffs' written requests, both Defendant Verizon EBC and Defendant Idearc EBC, in bad faith, refused and continue to refuse to provide Plaintiffs any of the pension plan's investment policy guidelines.

**75.**    Defendant Verizon EBC's and Defendant Idearc EBC's refusal to fully comply with ERISA Section 104(b)(4) document requests has prejudiced Plaintiffs' effort to police their pension plans and to guard against breaches of fiduciary duty.

**76.**    ERISA Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), in view of applicable current federal regulations, provides for penalties of up to $110 a day against a plan administrator personally for the administrator's "failure or refusal" to provide any of the plan documents the administrator is required by law to provide to participants and beneficiaries.

**77.**    Pursuant to ERISA Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), this Court should assess penalties up to $110 a day against both Defendant Verizon EBC and Defendant Idearc EBC for their respective failure or refusal to provide Plaintiffs requested documents and instruments under which the pension plans are established or operated.

**78.**    As of this filing date (November 25, 2009), each Defendant is liable to Plaintiffs for a civil penalty of $110 per day commencing thirty days after February 4, 2009.

## SECOND CLAIM FOR RELIEF
**(Against Both Defendant Verizon EBC and Defendant Idearc EBC**
**For Breach of Fiduciary Duty for Refusal to Disclose Pension Plan Related Information)**

**79**.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 78, inclusive, as if they were fully set forth herein.

**80.**    Despite Plaintiffs written request of February 4, 2009, both Defendant Verizon EBC and Defendant Idearc EBC refuse and continue to refuse to provide Plaintiffs pension plan related information.   Plaintiffs did not timely receive documents and information responsive to the following numbered requests as set forth in their February 4, 2009 letter:  Nos. 1-3 (Verizon's documents withheld);   No. 4 (Final actuarial report not produced by either Verizon

or Idearc);  No. 5 (Both Verizon's and Idearc's documents withheld);   Nos. 7, 8 and 9

(Verizon's documents withheld);  No. 10 (Idearc's documents not withheld but missing);  and

Nos. 12 and 13 (Idearc's documents withheld).

  81. With respect to some of the requests made by Plaintiffs, said defendants sole

stated reason for refusing to provide Plaintiffs the information and documents was that "Section

104(b) of ERISA does not require that they be provided."

  82. ERISA Section 104(b), 29 U.S.C. Section 1024(b)(4), does not limit or foreclose

plan participants from obtaining from pension plan administrators documents and related

information in addition to those matters specifically listed in the statutory provision.  It was

imprudent for said defendants to refuse to provide Plaintiffs the requested information and

documents solely because it is not specifically required under that statutory provision.

  83. Said defendants's failure or refusal to make requested disclosures and produce

documents prejudices Plaintiffs' effort to police their pension plans and to guard against

breaches of fiduciary duty.

  84. Said defendants's failure or refusal to make requested disclosure and produce

requested documents interfered with Plaintiffs' efforts to pursue their class-wide administrative

claim.

  85. Defendant Verizon EBC's failure to produce requested documents and to make

requested disclosures was a violation of applicable pension plan rules.  For instance, Section

9.13 appearing on page 99 of the Verizon Management Pension Plan, as amended and restated

effective January 1, 2002, states that "[i]n connection with an appeal, the claimant (or his duly

authorized representative) may review documents and other information relevant to the claim

(copies of which shall be provided free of charge upon request) and may submit evidence and

arguments in writing to the VCRC."   By not producing documents and information Plaintiffs

deem relevant to their class-wide administrative claim, Defendant Verizon EBC effectively made

Plaintiffs' internal appeals procedure futile.

86.    By not producing requested documents and disclosing requested information both

Defendant Verizon EBC and Defendant Idearc EBC violated their respective fiduciary duties

under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1) which statutory provision mandates

fiduciaries act in the best interests of plan participants.

87.    Pursuant to ERISA Section 502(a)(3), 29 U.S.C. Section 1132(a)(3), Plaintiffs ask

this Court to grant appropriate equitable relief including injunctive relief ordering both

Defendant Verizon EBC and Defendant Idearc EBC to disclose the information and produce the

documents each has in its respective possession that is responsive to Plaintiffs' request for

information enumerated in paragraph 80 above as set forth in their February 4, 2009 demand

letter.

### THIRD CLAIM FOR RELIEF
**(Against Defendant Verizon EBC For Breach of Fiduciary Duty
Including Failure to Comply with Plan Document Rules)**

88.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1

through 87, inclusive, as if they were fully set forth herein.

89.    When the spin-off was concluded - November 17, 2006 - and Defendants treated

Plaintiffs' and other retirees' rights to receive payment of benefits out of Verizon's pension plans

as being terminated, none of the then existing terms and rules of the applicable Verizon pension

plans authorized such activity.

90.    Although, during November 2006, Verizon's pension plans contained a specific

provision contemplating there could be mergers, consolidations of the pension plans, and transfers of "assets" or "liabilities," there were no plan terms or rules that either specifically allowed the curtailment of payment of accrued pension plan benefits and the simultaneous involuntary transfer of Plaintiffs and other retired pension plan participants into Idearc's pension plans.

91.    Plaintiffs are neither intangible monetary "assets" nor "liabilities." They are persons, plan participants with rights to vested accrued benefits. At least throughout November 2006, Verizon EBC and other pension plan fiduciaries and plan administrators continued to owe all Plaintiffs and other similarly situated retired plan participants and their beneficiaries the highest duty of care, including a duty not to treat the retirees like they were movable chattels.

92.    Verizon amended several of its pension plan documents *after the fact*, more than a month after the spin-off creation of Idearc and the transfer of pension plan assets together with Plaintiffs and other selected retired plan participants.   The pension plan amendments were executed and adopted on December 22, 2006.

93.    On the one hand, under the terms of the applicable Verizon pension plans, the transfer of liabilities can serve to extinguish benefits payable under the respective pension plan. For example, Section 11.3 appearing on page 107 of the Verizon Management Pension Plan states, in part, "[a]ny liability transferred from the Plan to another plan pursuant to this Section 11.3 shall result in the extinguishment of such liability hereunder immediately upon such transfer, and no benefit previously payable under the Plan on account of such liability shall be payable under the Plan following such transfer."

94.    On the other hand, Verizon pension plans contain no terms dictating that the

transfer of excess or surplus assets operates to extinguish pension benefits payable under the respective pension plan.

95.    At least during the period November 1, 2006 through December 21, 2006, there were no controlling pension plan documents or plan terms identifying the monies that Verizon transferred from its pension plans and master trust into Idearc's pension plans and master trust as constituting "liabilities" linked to payable pension benefits.  Lacking any specific identification or formal designation when transferred, the monies should be deemed to be excess or surplus pension assets.

96.    At least during the period November 1, 2006 through December 21, 2006, pension plan fiduciaries and plan administrators were not excused from their obligation to continue paying retired pensioners and their beneficiaries on annuity pay status their accrued service pension benefits directly from Verizon's pension plans.

97.    One of ERISA's duties imposed on plan administrators is that they must act in strict conformity with existing rules and plan terms, not later adopted rules.

98.    The fact that Verizon's pension plans might allow certain amendments to be effective on any given date, did not relieve the plan fiduciaries and administrators of their responsibility, obligation, or duty imposed by or under ERISA's statutory provisions.  For instance, Section 14.4 appearing on page 128 of the Verizon Management Pension Plan states, in part, "[n]othing in the Plan shall relieve or be deemed to relieve any Plan fiduciary, obligation, or duty imposed by ERISA."  Likewise, Section 11.2 appearing on page 106 of the Verizon Management Pension Plan states, in part, "no amendment shall reduce any benefit, that is accrued or treated as accrued under section 411(d)(6) of the Code, of any participant, or the

percentage (if any) of such benefit that is vested, on the later of the date on which the amendment is adopted or the date on which the amendment becomes effective."

99.     By making the December 22, 2006 pension plan amendments retroactive to November 17, 2006, Verizon and plan administrators wrongfully reduced the amount of the accrued service pension benefits owed for the months of November and December 2006 to Plaintiffs and putative class members.

100.     At least prior to December 22, 2006 all action taken with respect to all pension assets and all retired plan participants had to be in exact accordance with then existing governing plan terms and rules.   Plaintiffs invoke the teachings and pronouncements by the United States Supreme Court in the case of  *Kennedy v. Plan Administrator for DuPont Savings and Investment*, 129 S.Ct. 865 (2009), wherein the Court confirmed that ERISA provides no exception to the plan administrator's duty to act in accordance with existing plan documents and stated rules.

101.     When Plaintiffs and other retirees were reclassified from being Verizon retirees into being Idearc retirees, the obligations under Verizon's pension plans for payment of accrued service pension monthly annuities had not been extinguished.  At no time during November 2006 were there any plan terms or rules which effectively extinguished any retired plan participant's right to continued payment of his or her accrued service pension benefits.

102.     At least prior to the December 22, 2006 adopted plan amendments, Verizon's pension plan fiduciaries and administrators were required to continue to act as they had before in exact compliance with then existing governing pension plan terms.

103.     Verizon pension plan benefits should have been paid out to Plaintiffs and putative

class members during November and December 2006 in exact accordance with the unamended rules then in effect.

104.    Verizon EBC's involuntary reclassification and removal of retirees from Verizon sponsored pension plans as of November 17, 2006 was action taken in violation of the retirees' contractual rights under the Verizon pension plans and action taken in violation of controlling pension plan terms.

105.    In addition, Verizon EBC's wrongfully reclassified other retirees who no longer had any right to receive accrued pension benefits, and those retirees were transferred into Idearc's pension roles.  Inexplicably, pursuant to the December 22, 2006 dated Schedule XLV(A)(2)(a) to the Verizon Management Pension Plan, Verizon acted to remove from its retirement rolls, management retirees who  "had an accrued benefit under the Plan that had been fully cashed-out before the spin-off date."  In so doing, Defendant Verizon EBC wrongfully interfered with those retirees' rights to continue receiving Verizon's retiree welfare benefits.

106.    Accordingly, Defendant Verizon EBC violated ERISA Section 404(a)(1) which statutory provision mandates fiduciaries discharge their "duties with respect to a plan solely in the interest of the participants and beneficiaries and– for (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan. . ."  29 U.S.C. § 1104(a)(1).

## FOURTH CLAIM FOR RELIEF
### (ERISA Sections 502(a)(2) ) and (a)(3) Claim Against Verizon and Verizon EBC for Appropriate Equitable Relief)

**107..** Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 106, inclusive, as if they were fully set forth herein.

**108.** The pension monies Verizon transferred to Idearc prior to December 22, 2006 were excess or surplus pension assets not tied to any liabilities and Plaintiffs request, pursuant to ERISA Sections 502(a)(2) and (a)(3),  29 U.S.C. Section 1132(a)(2) and (a)(3), appropriate equitable relief, including a declaration that the transfer of surplus funds did not serve to change the retirees' status and did not extinguish any Plaintiff's or putative class member's rights to payment of benefits from the Verizon pension plans.

**109.** The December 22, 2006 plan amendments were illegally applied retroactively and and Plaintiffs request, pursuant to ERISA Sections 502(a)(2) and (a)(3),  29 U.S.C. Section 1132(a)(2) and (a)(3), appropriate equitable relief, including a declaration that the December 22, 2006 plan amendments are null and void.

**110.** Verizon's reclassification of Plaintiffs and purported transfer of the retirees from participation in Verizon's pension plans violated the terms of the Verizon pension plans and Plaintiffs request, pursuant to ERISA Sections 502(a)(2) and (a)(3),  29 U.S.C. Section 1132(a)(2) and (a)(3), appropriate equitable relief, including injunctive relief ordering Verizon's reclassification of Plaintiffs and other retirees be rescinded and that all Plaintiffs and putative class members be restored to their former status as participants in Verizon's pension and welfare plans and that they be made whole.

## FIFTH  CLAIM FOR RELIEF
**(ERISA Section 502(a)(1)(B) Claim for Verizon Pension Plan Benefits)**

**111**.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 110, inclusive, as if they were fully set forth herein.

**112**.    The decision to deny MURPHY's, NOE's and PALMER's class-wide administrative claim for payment of Verizon pension plan benefits, particularly those benefits due and payable to retirees for the months of November and December 2006, is not supported by substantial evidence and is unreasonable.   Any determination to deny those Plaintiffs' and other putative class members' claim for payment of Verizon pension plan benefits cannot withstand even a deferential review by the Court.

**113.**    Plaintiffs and putative class members were wrongfully denied benefits payable from Verizon's pension plans which benefits should be paid together with prejudgment interest.

## SIXTH CLAIM FOR RELIEF
**(Against Verizon and Verizon EBC for Violation of ERISA Section 510)**

**114**.    Plaintiffs incorporate and reallege by reference the foregoing paragraphs 1 through 113, inclusive, as if they were fully set forth herein.

**115.**    When Verizon reclassified Plaintiffs and putative class members so as to treat them as being transferred into Idearc's pension plans, Verizon was motivated in part to interfere with the retirees' rights to continue receiving payment of Verizon's retiree welfare benefits.

**116.**    When Verizon retroactively applied the December 22, 2006 pension plan amendments, Verizon was motivated in part to interfere with Plaintiffs' and putative class members' rights to receive Verizon pension plan payments, particularly the annuity payments due and payable during the months of November 2006 and December 2006.

117.     Verizon's reclassification of Plaintiffs and putative class members so as to treat them as being transferred to Idearc's pension plans was discriminatory treatment since Verizon gave preferential treatment to deferred vested plan participants not reclassified and not transferred into Idearc's pension plans.

118.     Verizon's reclassification of Plaintiffs and putative class members and subsequent treatment was action in violation of ERISA Section 510, 29 U.S.C. § 1140, inasmuch as Verizon discriminated against plan participants for the purpose of interfering with their attainment of rights to which they had and may become entitled under Verizon's pension and retiree welfare benefit plans.

119.     Plaintiffs and putative class members have suffered loss of either pension or welfare benefits or both since being reclassified and treated as transferred into Idearc's pension plans.

## CLASS ACTION ALLEGATIONS

120.     **Class Definition**.  Plaintiffs bring this action on behalf of all retirees and their beneficiaries formerly enrolled in Verizon's pension plans who were reclassified by Verizon and treated as transferred into Idearc's pension plans pursuant to the spin-off occurring in November 2006.  The proposed class is easily identifiable by Verizon's records.

121.     This action is maintainable as a class action under Federal Rule of Civil Procedure Rule 23, subsections (a), (b)(2), and (b)(3).

122.     **Class Size**.  The precise size of the class is presently unknown and will be determined in this case through mandated disclosures and formal discovery.  However, Plaintiffs are informed and believe, and on that basis allege, that the size of the class is well over two

thousand.   The class is so numerous that joinder of all the members of the class is impractical.

123.   **Questions of Law and Fact Common to the Class**.  This suit poses questions of law and fact which are common to and affect the rights of all putative class members.  The questions presented include, but are not limited to:   A)  whether pension plan administrators and fiduciaries violated their fiduciary duties under ERISA Section 404(a)(1);   B) whether Plaintiffs and putative class members are entitled to payment of Verizon pension plan benefits;  and C) whether Plaintiffs and other retired plan participants and their beneficiaries are entitled to declaratory and injunctive relief and the form and extent of the relief to which they should receive.

124.   **Typicality of the Claims of the Representatives**.  The claims of Plaintiffs are typical of the claims of the proposed class as a whole.

125.   **Adequacy of Representation**.  Plaintiffs have no interest antagonistic to or in conflict with the interests of the proposed class.  Indeed, Plaintiffs have the support of hundreds of putative class members.

126.   Plaintiffs' proposed lead counsel Curtis L. Kennedy is experienced counsel who has served as class counsel in ERISA cases successfully litigated and concluded.

127.   Defendants' reliance on either the EMA, a non plan document, or *post hoc* amendments to Verizon's pension plans to uphold the involuntary reclassification and treatment of Plaintiffs and other retirees as being transferred into Idearc's pension plans makes appropriate an award of final injunctive and declaratory plan-wide and class-wide relief.

128.   Questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual participants and beneficiaries.   The

predominant questions in this litigation concern the rights of proposed class members to receive declaratory, injunctive and equitable relief, and whether Defendants should be required to reverse Verizon's reclassification and involuntary transfer of Plaintiffs and other retirees from Verizon's pension plans and welfare plans into Idearc's pension plans and welfare plans.

129.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

130.    Members of the proposed class have little interest in individually controlling the prosecution of separate actions.

131.    In the interests of judicial efficiency, the claims arising out of this controversy should be consolidated in this proposed class action before this Court.

132.    No undue difficulties are anticipated to result from the prosecution of this proceeding as a class action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs PHILIP A. MURPHY, Jr., SANDRA R. NOE, and CLAIRE M. PALMER, individually and on behalf of the proposed class, seek orders and judgments against Defendants as follows:

A.    Pursuant to ERISA Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), grant Plaintiffs judgment assessing penalties against Defendant Idearc EBC based upon the maximum $110 per diem rate for failure to comply within 30 days after their respective August 13, 2008 and February 4, 2009 written demands for production of documents, including instruments and other documents under which Idearc's pension plans are established or operated;

B.    Pursuant to ERISA Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(1)(B), grant all

Plaintiffs judgment assessing penalties against Defendant Verizon EBC based upon the maximum $110 per diem rate for failure to comply within 30 days after the February 4, 2009 written demand for production of documents, including instruments and other documents under which Verizon's pension plans are established or operated;

      **C.**     Declare that both Defendant Verizon EBC and Defendant Idearc EBC, when refusing to provide Plaintiffs requested documents and pension related information not specifically listed as required disclosures under ERISA Section 104(b)(4), failed to discharge fiduciary duties to act solely in the interests of the participants and beneficiaries, as required by ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1);

      **D.**     Grant Plaintiffs such other and further appropriate equitable relief allowable under ERISA §§ 502(a)(3), as the Court deems just and proper, including injunctive orders directing Defendant Idearc EBC forthwith disclose the pension plan information and produce the documents requested in their respective August 13, 2008 and February 4, 2009 written demand letters;

      **E.**     Grant Plaintiffs such other and further appropriate equitable relief allowable under ERISA §§ 502(a)(3), as the Court deems just and proper, including injunctive orders directing Defendant Verizon EBC forthwith disclose the pension plan information and produce the documents requested in Plaintiffs' February 4, 2009 written demand letter;

      **F.**     Order the Third, Fourth, Fifth and Sixth claims in this action be maintained as a class action under Fed.R.Civ.P., Rule 23(a), (b)(2) and (b)(3), that Plaintiffs be appointed class representatives, the undersigned counsel be appointed class counsel, and require Defendants at their expense to publish and mail notification of this action to all members of the proposed class;

    **G.**     Grant Plaintiffs and putative class members the relief requested within the Third, Fourth, Fifth and Sixth claims in this action, including:

    **1.**     A declaration that Defendant Verizon EBC failed to discharge duties to act solely in the interests of the participants and beneficiaries of Verizon's employee benefit plans, as required by ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1);

    **2.**     A declaration that Defendant Verizon EBC failed to act in compliance with Verizon's pension plan documents rules and violated ERISA Section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);

    **3.**     Pursuant to ERISA Sections 502(a)(2) and (a)(3), 29 U.S.C. Section 1132(a)(2) and (a)(3), grant Plaintiffs appropriate equitable relief, including a declaration that the pension monies Verizon transferred to Idearc prior to December 22, 2006 were excess or surplus pension assets and that the December 22, 2006 plan amendments made retroactive are null and void;

    **4**     Pursuant to ERISA Sections 502(a)(2), (a)(3), 29 U.S.C. Section 1132(a)(2), (a)(3), grant Plaintiffs additional appropriate equitable relief, including injunctive relief ordering Verizon's reclassification of Plaintiffs and other retirees and their treatment as being transferred into Idearc pension plans be rescinded and that all Plaintiffs and putative class members be restored to their former status as participants in Verizon's pension and welfare plans and that they be made whole;

    **5.**     Pursuant to ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), grant equitable and remedial relief for the benefit of the pension plans including an order requiring reversal of the involuntary transfer of Plaintiffs and class members from Verizon's pension plans

into Idearc's pension plans;

      **6.**     Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), enter judgment in favor of Plaintiffs and putative class members and order payment of all unpaid Verizon pension plan benefits with interest;

      **7.**     Enter judgment against defendant Verizon declaring its actions taken against Plaintiffs and putative class members violated ERISA § 510, 29 U.S.C. § 1140, and award appropriate equitable relief, together with restoration of Verizon employee benefits with interest;

      **8**.     Pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), enter an order removing from both Defendant Verizon EBC and Defendant Idearc EBC those persons who supported, assisted and acquiesced in and defended the pension plan sponsor's efforts to reclassify and transfer Plaintiffs and class members from Verizon's pension plans into Idearc's pension plans;

    **H.**     Grant all Plaintiffs and the proposed class members such other and further class-wide and plan-wide relief, including appropriate equitable relief allowable under ERISA § 502(a)(3), as the Court deems just and proper;

    **I.**     Order Defendants' officers, employees and agents not to retaliate against Plaintiffs and the proposed class on the basis of the filing or prosecution of this action;  and

    **J.**     Pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1), order Defendants to pay the reasonable value of Plaintiffs' interim and final attorney's fees for services performed, expert witness fees, accounting fees, necessary expenses of litigation, and costs of this action.

DATED this 25th day of November, 2009.          Respectfully submitted,

*s/ Curtis L, Kennedy*
Colorado State Bar No. 12351
8405 E. Princeton Avenue
Denver, Colorado  80237-1741
Tele:  303-770-0440
Fax:   303-843-0360
CurtisLKennedy@aol.com

*s/ Robert E. Goodman, Jr.*
Texas State Bar No. 08158100
Robert E. Goodman, Jr., Esq.
FRANCIS GOODMAN PLLC
8750 North Central Expressway, Suite 1000
Dallas, Texas 75231
Tele:  214-368-1765
Fax:   214-368-3974
rgoodman@francisgoodman.com,
rgdallas@flash.net

*ATTORNEYS FOR PLAINTIFFS*

Plaintiffs' Names and Addresses:


Philip A. Murphy, Jr.
25 Bogastow Circle
Mills, MA 02054-1039

Sandra R. Noe
72 Mile Lane
Ipswich, MA 01938-1153

Claire M. Palmer
26 Crescent Street
West Newton, MA 02465-2008