UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


PHILIP A. MURPHY, JR., ET AL.,        )
                                      )
        Plaintiffs,                   )
                                      )        CIVIL ACTION NO.
VS.                                   )
                                      )        3:09-CV-2262-G
VERIZON COMMUNICATIONS, INC.,         )
ET AL.,                               )
                                      )
        Defendants.                   )


## MEMORANDUM OPINION AND ORDER


Before the court are motions to dismiss filed by two sets of defendants in this

case.  SuperMedia Employee Benefits Committee, SuperMedia Pension Plan for

Management Employees, and SuperMedia Pension Plan for Collectively Bargained

Employees (collectively, the "SuperMedia defendants")[1] move to dismiss the

amended complaint of the plaintiffs, Phillip A. Murphy, Jr. ("Murphy"), Sandra R.

---

[1]      SuperMedia Employee Benefits Committee was formerly known as
Idearc Employee Benefits Committee, SuperMedia Pension Plan for Management
Employees was formerly known as Idearc Pension Plan for Management Employees,
and, SuperMedia Pension Plan for Collectively Bargained Employees was formerly
known as Idearc Pension Plan for Collective Bargained Employees.

Noe ("Noe"), and Claire M. Palmer ("Palmer"), under FED. R. CIV. P. 12(b)(6) for

failure to state a claim on which relief can be granted (docket entry 22). Meanwhile,

Verizon Communications Inc. and Verizon Employee Benefits Committee

(collectively, the "Verizon defendants") move to dismiss the plaintiffs' fifth claim for

relief as time barred (docket entry 18). For the reasons set forth below, the

SuperMedia defendants' motion to dismiss is granted in part and denied in part,

while the Verizon defendants' motion to dismiss is granted.

## I. BACKGROUND

This is an action brought by the plaintiffs, Murphy, Noe, and Palmer,

individually and as representatives of a putative class of similarly situated individuals

(the "plaintiff class") against the SuperMedia defendants, the Verizon defendants,

Verizon Management Pension Plan, Verizon Pension Plan for New York and New

England Associates, and Idearc Inc., now known as SuperMedia Inc.[2] ("Idearc"), for

alleged violations of the Employee Retirement Income Security Act ("ERISA" or the

"Act"), 29 U.S.C. § 1001, *et seq.* Amended Complaint for Proposed Class Action

Relief Under ERISA ("Amended Complaint") ¶¶ 1, 2. The plaintiffs' claims arise out

of Verizon Communications Inc. ("Verizon")'s involuntary transfer of the plaintiffs

from the well-established Verizon Management Pension Plan and Verizon Pension

Plan for New York and New England Associates (collectively, the "Verizon pension

---

[2]      Idearc Inc., n/k/a SuperMedia Inc., was voluntarily dismissed by
stipulation on February 9, 2010. *See* docket entry 17.

plans"), to the newly-formed SuperMedia Pension Plan for Management Employees and SuperMedia Pension Plan for Collectively Bargained Employees (collectively, the "SuperMedia pension plans").  Plaintiffs' Opposition to "The Verizon Defendants' Motion to Dismiss Plaintiffs' Fifth Claim for Relief" ("Fifth Claim Opposition") at 2.

In October of 2006, Verizon announced that its Board of Directors had approved a proposed spin-off of its information services division into a separate, publicly-traded company:  Idearc.  Amended Complaint ¶ 25.  Verizon completed the spin-off transaction on November 17, 2006, and Verizon and Idearc executed an Employee Matters Agreement on that same date.  *Id*. ¶¶ 27, 29.  As part of the transaction, Verizon reclassified the plaintiffs, as well as over two thousand other participants in the Verizon pension plans, and transferred them to the SuperMedia pension plans.  *Id*. ¶ 40.  The plaintiffs allege that this transfer violated the terms of the Verizon pension plans, which expressly permit "mergers" or "consolidations" but not "spin-off" transactions.  *Id*. ¶¶ 41-42.  Between the time that the spin-off was announced and the time that it was completed, neither Verizon nor the Verizon pension plans' administrator, Verizon Employee Benefits Committee ("Verizon EBC"), sought the opinion of an independent pension plan fiduciary regarding the advisability of transferring the plaintiff class to Idearc.  *Id*. ¶ 28.

On December 22, 2006, Verizon executed and adopted pension plan amendments ("the December amendments") containing terms that permitted the

transfer of assets, liabilities, and retirees to the SuperMedia pension plans. *Id*. ¶ 43. The plaintiffs contend that Verizon made the December amendments retroactive to November 17, 2006, the date on which the transfer occurred, in violation of the terms governing the Verizon pension plans. *Id*. Between November 17, 2006 and December 22, 2006, none of the retirees selected for reclassification and transfer to the SuperMedia pension plans was paid benefits from the Verizon pension plans.[3] *Id*. ¶ 44. The plaintiffs allege that Palmer and other management retirees were notified by letter dated January 25, 2007 that, as a result of the spin-off, Idearc assumed the responsibilities and obligations for their benefit plans. *Id*. ¶ 45. Noe and other non-management retirees allegedly received a similar notification by letter dated February 15, 2007. *Id*. ¶ 46. The plaintiffs aver that Verizon's letters "concealed" the date on which the December amendments were adopted and did not disclose the fact that the amendments were made retroactive. See *id*. ¶¶ 45, 46.

Less than two years after the spin-off transaction was completed, Idearc ran into financial trouble. *Id*. ¶ 49. As a result, Idearc began reducing the benefits provided to the plaintiff class. *Id*. On March 31, 2009, Idearc and its domestic subsidiaries filed for reorganization under Chapter 11 of the United States Bankruptcy Code. See *id*. ¶ 62. The plaintiffs allege that "Verizon EBC and plan

---

[3]    The plaintiffs' pleadings are ambiguous as to whether the retirees who were reclassified and transferred were paid benefits from the SuperMedia pension plans between November 17, 2006 and December 22, 2006. *See* Amended Complaint ¶ 44.

administrators either knew or should have known that Idearc was overburdened with debt and that the involuntary transfer of retirees into Idearc's control would not be in the retirees' best interest." *Id.* ¶ 47.

On August 13, 2008, Noe and Palmer sent a letter to the SuperMedia pension plans' administrator, SuperMedia Employee Benefits Committee ("SuperMedia EBC"), requesting production of "Form 5500s and 'all other documents created since January 2006 under which the pension plans and the master trust are established and operated within the meaning of ERISA Section 104(b)(4).'" *Id.* ¶ 51 (original emphasis omitted).  On February 4, 2009, the plaintiffs submitted a written class-wide administrative claim to both Verizon EBC and SuperMedia EBC seeking, among other things, reversal of plaintiff class' reclassification and transfer.  *Id.* ¶ 52.  By the same letter, the plaintiffs requested a number of documents pursuant to ERISA section 104(b)(4), many of which Verizon EBC or SuperMedia EBC refused or failed to provide.  See *id.* ¶¶ 53-58.  The plaintiffs roughly grouped the documents that SuperMedia EBC, in particular, failed to produce into four categories:  (1) form 5500s; (2) funding and actuarial reports; (3) Internal Revenue Service ("IRS") approvals and qualifications; and (4) investment policies/guidelines.  *See* Plaintiffs' Opposition to SuperMedia Defendants' Motion to Dismiss ("Plaintiffs' Opposition") at 11-18; SuperMedia Defendants' Reply Brief in Response to Plaintiffs' Opposition to Motion to Dismiss ("SuperMedia Reply") at 4.  The plaintiffs argue that

SuperMedia EBC's withholding of the requested documents constitutes a breach of fiduciary duty under ERISA. Amended Complaint ¶ 58.

Between February 4, 2009 and November 13, 2009, the plaintiffs sought administrative remedies from SuperMedia EBC and Verizon EBC. See *id.* ¶¶ 59-71. The plaintiffs allege that SuperMedia EBC refused to make a determination on the plaintiffs' internal claims and that Verizon EBC did not comply with the Verizon pension plan rules requiring a final internal appeals decision to be issued within sixty days of the appeal. See *id.* ¶¶ 72-74, 77. The plaintiffs maintain that SuperMedia EBC responded to their administrative claim only by stating that "ERISA does not recognize such a claim" and that SuperMedia EBC did not produce a full record of their administrative claim and appeal. *Id.* ¶¶ 69, 93.

The plaintiffs filed this action on November 25, 2009. *Id.* ¶ 83. They assert six claims: (1) relief against Verizon EBC and SuperMedia EBC for breach of fiduciary duty under 29 U.S.C. § 1104(a)(1) ("ERISA section 404(a)(1)"); (2) relief against Verizon EBC and SuperMedia EBC for violation of 29 U.S.C. § 1024(b)(4) ("ERISA section 104(b)(4)"); (3) relief against Verizon EBC for breach of ERISA section 404(a)(1) fiduciary duty; (4) equitable relief against all of the named defendants under 29 U.S.C. § 1132(a)(3) ("ERISA section 502(a)(3)"); (5) relief against the Verizon defendants for violation of 29 U.S.C. § 1140 ("ERISA section 510"); and (6) relief against the Verizon pension plans for violation of 29 U.S.C.

§ 1132(a)(1)(B).  *See* Fifth Claim Opposition at 2-6.  On March 10, 2010, the

SuperMedia defendants moved to dismiss for failure to state a claim and the Verizon

defendants moved to dismiss the plaintiffs' fifth claim for relief as time barred.

## II.  ANALYSIS

### A.  The Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead

'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182

(2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555

(citations, quotations marks, and brackets omitted).  "Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that all

the allegations in the complaint are true (even if doubtful in fact)."  *Katrina Canal*,

495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks

omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light

most favorable to the plaintiff."  *Id.* (quoting *Martin K. Eby Construction Company, Inc.*

*v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949-50 (2009).  The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 1950.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id*.  The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id*. at 1949.  The plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id*. at 1950 (*quoting* FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible."  See *id*. at 1950, 1952.

## 1. *The SuperMedia Pension Plans*

The plaintiffs contend that the SuperMedia pension plans are "necessary parties to this litigation" because the equitable relief the plaintiffs seek under ERISA section 502(a)(3) involves removing all retirees and their beneficiaries from the SuperMedia pension plans and restoring them back to the Verizon pension plans. Plaintiffs' Opposition at 8-9. The plaintiffs argue that "[t]his reverse transaction will require the full cooperation of the SuperMedia pension plans which maintain current contact information for all putative class members." *Id.* at 9.

ERISA section 502(a)(3) provides, in pertinent part, "A civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief . . . to redress . . . violations [of ERISA Title I or the terms of the plan] or . . . to enforce any provision of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3) (2009). ERISA section 502(a)(3) authorizes a participant, beneficiary, or fiduciary to bring a cause of action seeking equitable relief against a defendant whose "status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself." *Harris Trust and Savings Bank v. Saloman Smith Barney Inc.*, 530 U.S. 238, 247 (2000). In *Harris Trust*, the Supreme Court held that a transferee of ill-gotten plan assets may be liable for restitution of those assets if he had actual or constructive knowledge of the circumstances rendering the transfer unlawful. *Id.* at 251.

- 9 -

In this case, the plaintiffs have failed to allege the grounds upon which equitable relief may be granted against the SuperMedia pension plans. The plaintiffs' argument that the SuperMedia pension plans are "necessary parties" under Rule 19(a) of the Federal Rules of Civil Procedure is tautological. "[I]t is implicit in Rule 19(a) itself that . . . before [a party] will be joined as a defendant the plaintiff must have a cause of action against it." *Vieux Carre Property Owners, Residents & Associates, Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989), *cert. denied*, 493 U.S. 1020 (1990). For the plaintiffs' ERISA section 502(a)(3) claim against the SuperMedia pension plans to survive the present motion to dismiss, the plaintiffs must allege conduct by the SuperMedia pension plans that violated a duty imposed by ERISA or the plan. *Harris Trust*, 530 U.S. at 246 (explaining that ERISA section 502(a)(3) only authorizes appropriate equitable relief for the purpose of redressing violations, or enforcing any provision, of ERISA or an ERISA plan). The plaintiffs' allegations do not support an inference that the SuperMedia pension plans are liable for any conduct, let alone conduct that violated a duty imposed upon them by ERISA or the terms of the pension plans. Accordingly, the plaintiffs' claims for equitable relief against the SuperMedia pensions plans are dismissed.

### 2. *SuperMedia EBC*

The plaintiffs assert three claims against SuperMedia EBC. First, according to the plaintiffs, SuperMedia EBC "failed or refused to honor within 30 days of

plaintiffs' written request for copies of pension plan documents" in violation of

ERISA section 104(b)(4).  Plaintiffs' Opposition at 9-10.  Second, SuperMedia EBC,

as plan administrator, breached its fiduciary duties owed under ERISA section

404(a)(1) by denying many of the plaintiffs' requests for plan documents and by not

affording a full and fair review of their administrative claim.  *Id.* at 18-20.  Finally,

the plaintiffs seek equitable relief under ERISA section 502(a)(3) against SuperMedia

EBC for the involuntary transfer of the plaintiff class from the Verizon pension plans

to the SuperMedia pension plans.  Amended Complaint ¶ 140.  The court will

address each claim in turn.

### a.  ERISA Section 104(b)(4)

The plaintiffs have categorized the documents that SuperMedia EBC failed to

produce in the following manner:  (1) form 5500s; (2) funding and actuarial reports;

(3) IRS approvals and qualifications; and (4) investment policies/guidelines.  *See*

Plaintiffs' Opposition at 11-18; SuperMedia Reply at 4.  The court will use these

same categories in analyzing the SuperMedia defendants' motion to dismiss.

### i.  Form 5500s

ERISA section 104(b)(4) requires a pension plan administrator to furnish "the

latest annual report" upon written request of any participant or beneficiary.  29

U.S.C. § 1024(b)(4).  By letter dated August 13, 2008, Noe and Palmer requested

SuperMedia EBC to produce form 5500s from 2006 and 2007.  Amended Complaint

¶ 51; SuperMedia Reply, Exhibit A at 1-2.  Courts have used the terms "form 5500" and "annual report" interchangeably.  See, *e.g.*, *Faircloth v. Lundy Packing Company*, 91 F.3d 648, 651 (4th Cir. 1996), *cert. denied*, 519 U.S. 1077 (1997).  The plaintiffs, however, do not allege that SuperMedia EBC failed to produce the requested annual reports.  Rather, the plaintiffs profess generally that SuperMedia EBC "failed to timely produce *some* responsive documents and *some* responsive documents have not yet been produced."  *See* Amended Complaint ¶ 51 (emphasis added).

Applying *Iqbal's* two-pronged approach to the plaintiffs' ERISA section 104(b)(4) claim, the court finds that the plaintiffs' stated ground for relief amounts to little more than an application of "labels and conclusions" to "a formulaic recitation of the elements."  See *Iqbal*, 129 S.Ct. at 1949.  The plaintiffs must do more than broadly label the documents requested as "Form 5500s and '[a]ll other documents created since January 2006 under which the pension plans and the master trust are established and operated within the meaning of ERISA Section 104(b)(4)'" and then declare in a conclusory fashion that SuperMedia EBC failed to produce "some" responsive documents.  *See* Amended Complaint ¶ 51 (original emphasis omitted).  Although the plaintiffs are correct that Rule 8(a) of the Federal Rules of Civil Procedure does not require them to specifically plead and identify each requested document that SuperMedia EBC did not produce, *Twombly* and *Iqbal* mandate well-pleaded facts sufficient to "give the defendant fair notice of what the . .

. claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The plaintiffs' allegation that they made requests for form 5500s *and other plan documents*, to which SuperMedia EBC did not *fully* respond, fails to do so. Thus, the plaintiffs have not stated a claim based on SuperMedia EBC's withholding of some documents that might have been responsive to their broad request for form 5500s and other ERISA section 104(b)(4) documents.

### ii. Documents Falling Under the "Other Instruments" Provision of ERISA Section 104(b)(4)

The plaintiffs concede that ERISA section 104(b)(4) does not expressly require disclosure of the remaining documents that they allege SuperMedia EBC wrongfully withheld. The plaintiffs argue, instead, that SuperMedia EBC should have produced those documents in accordance with the "other instruments" provision of the statute. *See* Plaintiffs' Opposition at 10-18. While the Fifth Circuit has yet to rule on the breadth of that provision, the circuits are split on the issue: the Fourth and Second Circuits have construed the provision narrowly to reach governing documents only, while the Sixth and Ninth Circuits have adopted a slightly broader construction to include any information that is helpful to a pension plan's participants. Compare *Faircloth*, 91 F.3d at 654 ("The clear and unambiguous meaning of this statutory language encompasses only formal or legal documents under which a plan is set up or managed") and *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142 (2d Cir. 1997) ("Congress meant the formal legal documents that

- 13 -

govern or confine a plan's operations, rather than the routine documents with which or by means of which a plan conducts its operations.") with *Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (en banc) ("The relevant documents are those documents that provide individual participants with information about the plan and benefits."), *cert. denied*, 517 U.S. 1189 (1996), and *Bartling v. Fruehauf Corporation*, 29 F.3d 1062, 1070 (6th Cir. 1994) ("[A]ll other things being equal, courts should favor disclosure where it would help participants understand their rights."). The court finds the Fourth and Second Circuits' reasoning more persuasive, and therefore adopts a narrow construction of ERISA section 104(b)(4)'s "other instruments" provision to determine the sufficiency of the plaintiffs' remaining allegations against SuperMedia EBC. For the reasons that follow, the court concludes that the plaintiffs' ERISA section 104(b)(4) claim against SuperMedia EBC should be dismissed.

ERISA section 104(b)(4) provides:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, *or other instruments under which the plan is established or operated*.

29 U.S.C. § 1024(b)(4) (emphasis added). While the Act does not define "other instruments," the statutory language "other instruments under which the plan is established or operated" clearly and unambiguously "encompasses formal or legal

documents under which the plan is set up or managed." See *Faircloth*, 91 F.3d at 653.

Even if the statutory language were unclear -- which it is not -- the court agrees with

the Second Circuit that the legislative history and rules of statutory construction

support a narrow interpretation of the provision. See *Weinstein*, 107 F.3d at 142-44

(finding that both the legislative history and principles of statutory construction

suggests the "other instruments" provision refers only to "governing documents").

Accordingly, ERISA section 104(b)(4) requires only that a plan administrator furnish,

upon written request, the items specifically enumerated in the statute, documents

that the plan's administrator is either bound by or required to use in its decision-

making capacity, and instruments that create the rights or obligations of the plan's

participants, beneficiaries, or fiduciaries.[4]  See *id*. at 144-45.

---

[4]  To be clear, the court adopts a narrow view of the "other instruments" provision that distinguishes between information that is descriptive and instruments that are prescriptive.  The court rejects the Ninth and Sixth Circuits' holdings to the extent that they require a plan administrator to furnish documents that provide "information about the plan" or would "help participants understand their rights." See, *e.g.*, *Hughes*, 72 F.3d at 690; *Bartling*, 29 F.3d at 1070.  The court concludes that such a reading of the statute would strain the meaning of the statutory language to make it nearly "impossible to conceive of any documents even tangentially related to an employee benefit plan which would not fall within its scope."  See *Hughes*, 72 F.3d at 689.  "[I]f Congress had intended § 104(b)(4) to encompass all documents that provide information about the plan and benefits, Congress could have used language to that effect."  *Faircloth*, 91 F.3d at 654.  It did not.  This court will not "subvert the intent of Congress to provide detailed and uniform guidance as to what information must be furnished to plan participants" by imposing a disclosure requirement not enumerated in the Act.  See *Hughes*, 72 F.3d at 689 (internal quotation marks omitted).

1. *Funding and Actuarial Reports*

The plaintiffs allege that by letter dated February 4, 2009, they requested SuperMedia EBC to produce "all documents related to the establishment and operation of the Idearc pension plans, including . . . actuarial studies, funding projections, estimates and final reports concerning pension assets expected to be transferred and confirming the transfer of assets to Idearc for payment of pension liabilities." Amended Complaint ¶ 54. Unless explicitly stated in the terms of the pension plan, an administrator is not required to rely on actuarial studies or funding projections when making its decisions. Compare *Weinstein*, 107 F.3d at 145 ("Since actuarial valuation reports . . . are not sources of data that plan administrators are required to use, and are not sources of the rights or obligations of any of the participants, beneficiaries, or fiduciaries, . . . actuarial valuation reports are not within the scope of § 104(b)(4).") with *Faircloth*, 91 F.3d at 656 ("As described in the ESOP [(Employee Stock Ownership Plan)], the funding and investment policies set forth [the administrator's] obligations to fund the ESOP and explain the responsibilities regarding investing the assets of the ESOP."). The plaintiffs have not alleged that the terms of their pension plans require SuperMedia EBC to rely on such documents. Therefore, the plaintiffs have failed to state a claim for SuperMedia EBC's failure to produce funding and actuarial reports.

## 2. *IRS Approvals and Qualifications*

The plaintiffs allege that in their February 4, 2009 letter they requested SuperMedia EBC to produce "documents reflecting application made to the IRS for approval of the transfer of retirees and pension assets and qualification of the pension plans, as well as letters and responses by the IRS." Amended Complaint ¶ 56. The plaintiffs argue that "the application and any IRS determination letter indicating whether or not SuperMedia's pension plans qualified for the special tax treatment granted by the Internal Revenue Code constitute documents establishing the pension plans . . . ." Plaintiffs' Opposition at 14. The court disagrees. An application submitted to the Internal Revenue Service for determination of the pension plan's tax status, and any corresponding determination letter from the IRS, does not establish or manage the plan.[5] *Faircloth*, 91 F.3d at 654. These types of documents do not set out the parties' rights or obligations, or govern the plan administrator's decision-making. See *Weinstein*, 107 F.3d at 143. Thus, the plaintiffs have not stated a claim

---

[5]     The plaintiffs argue that the Act requires SuperMedia EBC to obtain IRS approval to operate the pension plans as tax-qualified plans exempt from taxation so it follows that the IRS application and determination letter therefore qualify as documents under which the plans were set up. Plaintiffs' Opposition at 13-14. Proof that the IRS must receive an application and make a determination for a pension plan to be granted tax-exempt status says nothing about the role that the IRS application or determination letter plays in governing or confining the plan's operations. IRS applications and determination letters are better categorized as "routine documents with which or by means of which a plan conducts its operations." See *Weinstein*, 107 F.3d at 142.

based on SuperMedia EBC's failure to produce IRS applications or determination letters.

### 3. *Investment Policies/Guidelines*

The plaintiffs also alleged that by their February 4, 2009 letter they requested that SuperMedia EBC produce "additional information with respect to the administration of the Idearc pension plans . . . including asset allocation policy/guidelines and investment policy/guidelines and proxy voting guidelines." Amended Complaint ¶ 57. In *Faircloth*, the Fourth Circuit held that funding and investment policies must be furnished under ERISA section 104(b)(4) if the plan "contemplates the establishment of funding and investment policies" that set forth the administrator's obligation to fund the plan or explain the responsibilities regarding investing the plan's assets. See *Faircloth*, 91 F.3d at 656. The plaintiffs have not alleged that the terms of the SuperMedia pension plans require SuperMedia EBC to follow the requested investment policy guidelines. The plaintiffs argue that they "requested production of the pension plan's investment policy guidelines because those documents constitute an 'instrument' under which the pension plan is 'established or operated' within the meaning of ERISA Section 104(b)(4)," and "[t]he investment guidelines that plaintiffs requested actually govern and restrict the plan's operations." *See* Amended Complaint ¶ 106; Plaintiffs' Opposition at 16. These conclusory allegations are not entitled to the assumption of truth. See *Iqbal*, 129

S.Ct. at 1950. The plaintiffs must do more to nudge their claims across the line from conceivable to plausible. See *id.* at 1952. The plaintiffs did not attach a copy of the terms governing the pension plans to their amended complaint to highlight language that might suggest that SuperMedia EBC is bound by the requested investment policies and/or guidelines. Moreover, the plaintiffs' complaint neither quotes nor paraphrases any language from those terms intimating that such is the case. Finding the necessary factual allegations lacking, the court concludes that the plaintiffs have failed to state a claim based on SuperMedia EBC's noncompliance with the their request for investment polices and/or guidelines.

### b. ERISA Section 404(a)(1)

The plaintiffs contend that SuperMedia EBC breached its ERISA section 404(a)(1) fiduciary duty by denying many of the plaintiffs' requests for documents and by failing to provide a full and fair review of their administrative claim. Plaintiffs' Opposition at 18-20. ERISA section 404(a)(1) states, in pertinent part, that a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use . . . ." 29 U.S.C. § 1104(a)(1)(B). ERISA section 404(a)(1), however, does not create additional disclosure obligations beyond those found in ERISA section 104(b)(4). See *Faircloth*, 91 F.3d at 657; *Shaver v.*

*Operating Engineers Local 428 Pension Trust Fund*, 332 F.3d 1198, 1202 (9th Cir.

2003); *see also Ehlmann v. Kaiser Foundation Health Plan of Texas*, 198 F.3d 552, 555

(5th Cir.) ("[T]his court should not add to the specific disclosure requirements that

ERISA already provides."), *cert. dismissed*, 530 U.S. 1291 (2000).  Because ERISA

section 104(b)(4) does not require SuperMedia EBC to produce the documents

discussed above, the plaintiffs' ERISA section 404(a)(1) claim fails to the extent that

it is based on their ERISA section 104(b)(4) claim.

The court nevertheless finds that the plaintiffs have stated a colorable claim for

relief under ERISA section 404(a)(1) based on SuperMedia EBC not providing a full

and fair review of their administrative claim.  *See* Amended Complaint ¶¶ 2, 63;

Plaintiffs' Opposition at 20.  ERISA section 503(2) provides that "every employee

benefit plan shall . . . afford a reasonable opportunity to any participant whose claim

for benefits has been denied for a full and fair review by the appropriate named

fiduciary of the decision denying the claim."[6]  29 U.S.C. § 1133(2).  "Section 1133

and its corresponding regulations require that the Plan:  (1) provide adequate notice;

_____

[6]     Questions abound regarding whether the plaintiffs' claims for benefits
have been denied within the meaning of ERISA section 503(2).  The parties neither
raised nor briefed the issue, and the court finds no need to decide the issue *sua sponte*
because it is not necessary to resolve SuperMedia EBC's present motion to dismiss.
The court notes, however, that SuperMedia EBC failed to even address the plaintiffs'
contention that they have stated an ERISA section 404(a)(1) breach of fiduciary duty
claim against SuperMedia EBC based on its noncompliance with ERISA section
503(2), which requires plan administrators to provide a full and fair review of plan
participants' administrative claims.

(2) in writing; (3) setting forth the specific reasons for such denial; (4) written in a manner calculated to be understood by the participant; and (5) afford a reasonable opportunity for a full and fair review by the administrator." *Wade v. Hewlett-Packard Development Company LP Short Term Disability Plan*, 493 F.3d 533, 540 (5th Cir. 2007). "A full and fair review concerns a beneficiary's procedural rights, for which the typical remedy is remand for further administrative review." See *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (2d Cir. 2008). Although the plaintiffs do not seek remand for further administrative review, they do seek equitable relief in the form of an injunction ordering SuperMedia EBC to provide them the "full administrative record which should be inclusive of all letter [*sic*] . . . from other retirees and the responsive letters sent to those retirees." *See* Amended Complaint ¶¶ 78-79 (alleging that seeking relief through SuperMedia EBC's internal claims procedure would be futile); see also *id*. ¶¶ 102-03.

The plaintiffs assert a number of well-pleaded allegations that, taken together, would if true support a finding that SuperMedia EBC did not provide a full and fair review of their administrative claim. First, the plaintiffs allege that they submitted a proposed class-wide administrative claim to SuperMedia EBC by letter dated February 4, 2009, and that SuperMedia EBC never rendered a decision addressing the merits of their claim. Amended Complaint ¶¶ 59, 63. Second, the plaintiffs allege that SuperMedia EBC responded to their administrative claim only by stating

that "ERISA does not recognize such a claim." *Id*. ¶ 69. Finally, the plaintiffs allege that SuperMedia EBC did not supply a full record of their administrative claim or any record whatsoever of their appeal. *Id*. ¶ 93. These well-pleaded allegations give notice to SuperMedia EBC of the conduct serving as the basis for the plaintiffs' breach of fiduciary duty claim against it. Accordingly, the plaintiffs have stated a claim against SuperMedia EBC under ERISA section 404(a)(1) for failure to provide a full and fair review of their administrative claim.[7]

### c. ERISA Section 502(a)(3)

Because the plaintiffs seek equitable relief for SuperMedia EBC's failure to provide a full and fair review of their administrative claim, the plaintiffs' ERISA section 502(a)(3) claim also survives the present motion to dismiss. The Fifth Circuit has made clear that "when the administrator fails to follow claims procedures consistent with the [regulatory] requirements, including providing adequate notice that it has denied the claim, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the

---

[7]     The plaintiffs' allegation that SuperMedia EBC did not provide a full and fair review of the plaintiffs' administrative claim is the sole basis for the court's decision to deny SuperMedia EBC's motion to dismiss the plaintiffs' ERISA section 404(a)(1) claim. The plaintiffs' allegation that SuperMedia EBC failed to produce documents under ERISA section 104(b)(4) does not state a claim for breach of fiduciary duty under ERISA section 404(a)(1). See *supra*.

claim." *Baptist Memorial Hospital-Desoto, Inc. v. Crain Automotive Inc.*, Nos. 08-60949, 08-61119, 2010 WL 3278258, at *4 (5th Cir. Aug. 19, 2010) (citing 29 C.F.R. § 2560.503-1(l)) (internal quotations marks omitted).

The court also finds that the plaintiffs have stated a claim for equitable relief against SuperMedia EBC for the involuntary transfer of the plaintiff class from the Verizon pension plans to the SuperMedia pension plans. In *Harris Trust*, the Supreme Court explained that ERISA section 502(a)(3) "admits of no limit . . . on the universe of possible defendants." 530 U.S. at 246. "[T]he focus, instead, is on redressing the *act or practice* which violates any provision of ERISA Title I" or the terms of the pension plan. See *Bernstein v. Citigroup Inc.*, No. 3:06-CV-0209-M, 2006 WL 2329385, at *6 (N.D. Tex. July 5, 2006) (Lynn, J.) (emphasis in original). ERISA section 502(a)(3) does not reach innocent parties, however, because the plaintiffs are not entitled to equitable relief unless they show that the defendants are somehow liable for the alleged unlawful act or practice. See *id*. Here, the plaintiffs allege that, as a consequence of Verizon's spin-off transaction, SuperMedia EBC is the current administrator of, and has assumed the responsibilities and obligations for, their benefits plan. *See* Amended Complaint ¶¶ 20, 39-40, 45-56; Plaintiffs' Opposition at 8-9. Since the plaintiffs seek to have SuperMedia EBC, as their plans' administrator, remove them from the SuperMedia pension plans and restore them back into the Verizon pension plans, they have stated a viable claim for equitable

relief under ERISA section 502(a)(3).[8] See, *e.g.*, *Franklin v. AT&T Corporation*, No. 3:08-CV-1031-M, 2008 WL 5156687, at *3 (N.D. Tex. Dec. 9, 2008) (Lynn, J) (concluding that a plan administrator is a proper defendant in an ERISA section 502(a)(3) action); *Sleater v. Boy Scouts of America*, No. 3:01-CV-2097-G, 2002 WL 663563, at *3 (N.D. Tex. Apr. 19, 2002) (Fish, C.J.) (same).

## B. The Statute of Limitations

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense. *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987). A statute of limitations defense may support dismissal under Rule 12(b)(6) where it is evident from the plaintiffs' pleadings that the action is time barred and the pleadings fail to raise some basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003), *cert. denied*, 540 U.S. 1161 (2004). A court should dismiss based on the statute of limitations only if that bar to relief appears on the face of the complaint or other appropriately considered materials. *Garrett v. Commonwealth Mortgage Corporation of America*, 938 F.2d 591, 594 (5th Cir. 1991).

ERISA section 510 prohibits, among other things, "discriminat[ion]" against a pension plan participant or beneficiary "for the purpose of interfering with the

---

[8]       The SuperMedia defendants seemingly concede this point. In their reply brief, the SuperMedia defendants agree that "[t]o the extent the Court determines a SuperMedia Defendant is needed to effectuate an order transferring retirees back to Verizon pension plans, the plans' administrator is the appropriate party -- SuperMedia EBC." SuperMedia Reply at 3 & n.4.

attainment of any right . . . under the plan . . . ."  29 U.S.C. § 1140.  The plaintiffs

argue that the Verizon defendants' reclassification and transfer of the plaintiffs was

"motivated in part to interfere with [their] rights to continue receiving payment of

their vested Verizon's pension benefits, as well as non-protected retiree welfare

benefits," in violation of ERISA section 510.  Amended Complaint ¶ 143; Fifth Claim

Opposition at 8.  The Verizon defendants moved to dismiss the plaintiffs' ERISA

section 510 claim as time barred because the face of the plaintiffs' complaint shows

that "any alleged act of interference with Plaintiffs' rights occurred [between

November and December of 2006] . . . , well more than two years before Plaintiffs

filed their original complaint on November 25, 2009."  Memorandum in Support of

the Verizon Defendants' Motion to Dismiss Plaintiffs' Fifth Claim for Relief

("Verizon Memorandum") at 3.  The plaintiffs do not dispute this time line, but

argue that the court should apply a four-year statute of limitations in this case

because their particular ERISA section 510 claim is most analogous to a breach of

contract claim, for which Texas provides a four-year statute of limitations.  Fifth

Claim Opposition at 10-12.  The court is not persuaded.

When Congress fails to provide a statute of limitations for claims arising under

federal statutes, courts apply the limitations period of the state-law cause of action

most analogous to the federal claim being asserted.  *Wilson v. Garcia*, 471 U.S. 261,

266-67 (1985), *superseded by statute on other grounds*, Pub. L. No. 101-650, 104 Stat.

5114, as recognized in *Jones v. Donnelley & Sons Company*, 541 U.S. 369 (2004). In *McClure v. Zoecom, Inc.*, 936 F.2d 777, 778 (5th Cir. 1991), the Fifth Circuit held, as a matter of first impression, that Texas' two-year statute of limitations for wrongful discharge or employment discrimination applies to ERISA section 510 claims. The *McClure* majority framed the issue as one to determine "the proper characterization of *a § 510 action* for limitation purposes." *Id*. (emphasis added). In so doing, the court rejected the argument that "for the purposes of selecting an appropriate statue of limitations" the focus should "remain on the rights and duties involved and not on the actions taken by the parties." *Id*. at 780 (Thornberry, J., dissenting). Finding that ERISA section 510 "by its terms proscribes specified acts of 'discharge' and 'discrimination,'" the Fifth Circuit held that Texas' two-year statute of limitations applies to ERISA section 510 claims. *Id*. at 778; see also *Lopez ex rel. Gutierrez v. Premium Auto Acceptance Corporation*, 389 F.3d 504, 507 (5th Cir. 2004) (holding that the argument that an ERISA section 510 claim is analogous to a contract claim, and is thereby subject to Texas' four-year statute of limitations, "is foreclosed by our decision in *McClure v. Zoecom, Inc.*, which squarely held that Texas's two-year statute of limitations for wrongful discharge and discrimination applies to section 510.").

Finding no basis to distinguish the Fifth Circuit's holding in *McClure*, the court applies Texas' two-year statute of limitations for wrongful discharge and employment

discrimination to the plaintiffs' ERISA section 510 claim.[9]  *See* TEX. CIV. PRAC. &

REM. CODE ANN. § 16.003 (Vernon 2005).  Because the face of the plaintiffs'

complaint demonstrates that this action was brought more than two years after any

alleged act of interference with the plaintiffs' rights, and the plaintiffs do not allege

any basis for tolling, the plaintiffs' ERISA section 510 claim is dismissed with

prejudice as time barred.

## III. <u>CONCLUSION</u>

For the reasons stated above, the SuperMedia defendants' motion to dismiss

for failure to state a claim is **GRANTED** in part and **DENIED** in part, and the

---

[9]     Applying a single statue of limitations to all ERISA section 510 claims
will help avoid litigation on collateral matters, and promote simplicity and
uniformity.  See *Wilson*, 471 U.S. at 275; *Tuemer v. General Motors Corporation*, 34
F.3d 542, 549 (7th Cir. 1994); *Sandberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331,
334 (2d Cir. 1997).  The court's decision to apply Texas' two-year statue of
limitations to the plaintiffs' ERISA section 510 claim is amply supported by decisions
of other courts in this circuit which have applied a two-year statute of limitations to
ERISA section 510 claims that do not allege wrongful discharge or have anything to
do with loss of employment.  See, *e.g.*, *Berry v. Allstate Insurance Company*, 84 F. App'x.
442, 444 (5th Cir. 2004) (citing *McClure*, 936 F.2d at 778) (applying Texas' two-year
statute of limitations in an ERISA section 510 case challenging an employer's denial
of ERISA benefits to temporary workers); *Onyebuchi v. Volt Management Corporation*,
No. 4:04-CV-0576-A, 2005 WL 1981393, at *4 (N.D. Tex. Mar. 31, 2005)
(McBryde, J.) (applying Texas' two-year statute of limitations in an ERISA section
510 case where plaintiff challenged defendants' alleged refusal to enroll plaintiff in
ERISA plan); *St. Julian v. Trustees of the Agreement of Trust for Maritime Association-I.L.A.
Pension Plan*, 5 F. Supp. 2d 469, 472 (S.D. Tex. 1998) (applying Texas' two-year
limitations period to the ERISA section 510 claim of a retired pension plan
participant alleging improper denial of disability benefits).

Verizon defendants' motion to dismiss the plaintiffs' fifth claim for relief is

**GRANTED**.

      **SO ORDERED**.

October 18, 2010.

                                                   _____

                                                 A. JOE FISH
                                               **Senior United States District Judge**