UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PHILIP A. MURPHY, JR., ET AL.,    )
    )
    Plaintiffs,    )
    )    CIVIL ACTION NO.
VS.    )
    )    3:09-CV-2262-G
VERIZON COMMUNICATIONS, INC.,    )
ET AL.,    )
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Before the court are (1) the Verizon defendants' motion for summary

judgment (docket entry 77), (2) the defendant Supermedia Employee Benefits

Committee ("SEBC")'s motion for summary judgment (docket entry 80), and (3) the

plaintiffs' motion for partial summary judgment (docket entry 81).  For the reasons

stated below, the Verizon defendants' motion is granted, the defendant SEBC's

motion is granted, and the plaintiffs' motion is denied.

## I.  INTRODUCTION

### A.  Nature of the Case

This suit arises out of Verizon Communications Inc. ("Verizon")'s

November 17, 2006 spinoff (the "spinoff") of a business unit known as Verizon

Information Services ("VIS") into a new publicly-traded company, Idearc, Inc. ("Idearc"). VIS was responsible for Verizon's operations in the directories business. *See* Second Amended Complaint for Proposed Class Action Relief Under ERISA ("Second Amended Complaint") ¶ 36 (docket entry 64). One of the consequences of the spinoff was that certain Verizon retirees, formerly employed by VIS and covered under Verizon's pension and health and welfare benefits plans, were transferred to pension and health and welfare benefits plans that had been created in the spinoff, to be administered by Idearc and its corporate affiliates. *Id.* ¶¶ 46-47. During the recession that affected the U.S. economy beginning in late 2007, Idearc experienced severe financial distress. By early 2009, Idearc commenced reorganization proceedings in the Northern District of Texas under Chapter 11 of the United States Bankruptcy Code. *See* Defendant SuperMedia Employee Benefits Committee's Brief in Support of its Motion for Summary Judgment ("SuperMedia Brief") at 5 (docket entry 82). Idearc emerged from these proceedings on December 31, 2009, under the name SuperMedia, Inc. ("SuperMedia"). *Id.*

Representatives of the retirees who were transferred from Verizon's to Idearc's (subsequently SuperMedia's) plans brought this suit in late 2009 for themselves and on behalf of the transferred retirees as a class. *See generally* Complaint for Proposed Class Action Relief Under ERISA ("Original Complaint") (docket entry 1). The central claim in the original complaint, which carries through to the currently

operative second amended complaint, was that the involuntary transfer of retirees from Verizon's allegedly more financially secure pension plans to Idearc's allegedly less-secure plans breached fiduciary duties in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. §§ 1001-1461.  *See* Original Complaint ¶¶ 39-40, 88-106; *see also* Second Amended Complaint ¶¶ 175-208 (the "fourth claim for relief").  The second amended complaint also alleges (1) that the manner in which Verizon and SuperMedia dealt with certain administrative claims relating to the transfer of retirees violated ERISA's provision for a "full and fair hearing" of beneficiaries' denied claims for benefits, *id.* ¶¶ 115-32 (the "first claim for relief"), (2) that the Verizon pension plans' summary plan descriptions ("SPDs") failed to conform to ERISA's requirements, *id.* ¶¶ 133-49 (the "second claim for relief"), (3) that Verizon violated ERISA provisions prohibiting fiduciaries from engaging in certain transactions adverse to beneficiaries' interests, *id.* ¶¶ 150-74 (the "third claim for relief"), (4) that SuperMedia (at the time, Idearc) failed to furnish the retirees with new SPDs in a timely manner following the transfer, *id.* ¶¶ 209-21 (the "fifth claim for relief"), (5) that the plaintiffs are entitled to appropriate equitable relief under ERISA Section 502, *id.* ¶¶ 222-31 (the "sixth claim for relief") (4) and that the plaintiffs have unfulfilled claims for benefits under Verizon's plans, *id.* ¶¶ 232-38 (the "seventh claim for relief").

B. <u>Relevant Background Facts</u>

On November 17, 2006, Verizon completed transactions that consummated the spinoff of VIS into the new, independent, publicly-traded company known as Idearc. Second Amended Complaint ¶¶ 36, 44. In connection with that spinoff, Verizon executed an Employee Matters Agreement ("EMA") with Idearc. *Id.* ¶ 46. The EMA transferred Verizon's liability for paying the plaintiffs' pension and welfare benefits to Idearc. *Id.* ¶ 47.

The plaintiff Philip A. Murphy, Jr. ("Murphy") is one individual affected by the EMA's transfer of liabilities. Murphy was an employee in the directories business of NYNEX, a predecessor of Verizon, at the time of his retirement in December 1996. *Id.* ¶ 6; *see also* Memorandum of Law in Support of the Verizon Defendants' Motion for Summary Judgment ("Verizon Brief") at 18 (docket entry 78). After his retirement, he received a service pension.[1] Second Amended Complaint ¶ 6. At the time of the spinoff, Murphy was a "participant," for ERISA purposes, of the Verizon Pension Plan for New York and New England Associates. *Id.* ¶ 7. Subsequent to the spinoff, he became a participant of the SuperMedia Pension Plan for Collectively Bargained Employees. *Id.*

---

[1]     Murphy, Noe, and Palmer were all participants in NYNEX's pension plans at the time of their retirement. Verizon Brief at 18. When NYNEX merged with Bell Atlantic, all three became participants in Bell Atlantic pension plans. *Id.* Bell Atlantic subsequently merged with GTE to become Verizon in 2000. *Id.* at 8, 18. It was that merger that brought the three named plaintiffs into Verizon's pension plans. *Id.* at 18.

The plaintiff Sandra R. Noe ("Noe") is another individual affected by the transfer.  Noe was also an employee in the directories business of NYNEX at the time of her retirement in April 1995.  *Id.* ¶ 8; *see also* Verizon Brief at 18.  After her retirement, she also received a service pension.  Second Amended Complaint ¶ 8.  At the time of the spinoff, Noe was a "participant," for ERISA purposes, of the Verizon Pension Plan for New York and New England Associates.  *Id.* ¶ 9.  Subsequent to the spinoff, she became a participant of the SuperMedia Pension Plan for Collectively Bargained Employees.  *Id.*

The plaintiff Claire M. Palmer ("Palmer") is a third individual affected by the transfer.  Palmer was an employee in the NYNEX directories business at the time of her retirement in April 1995.  *Id.* ¶ 10; *see also* Verizon Brief at 18.  At the time of the spinoff, Palmer was a "participant," for ERISA purposes, of the Verizon Management Pension Plan.  Second Amended Complaint ¶ 11.  Subsequent to the spinoff, she became a participant of the SuperMedia Pension Plan for Management Employees.  *Id.*

In addition to the transfer of liabilities accomplished in the EMA, and in accordance with 29 U.S.C. § 1054(g) ("Section 204(g)") and 29 U.S.C. § 1058 ("Section 208") and their implementing regulations,[2] Verizon transferred, at the time

---

[2]     These sections fall under ERISA's regulatory provisions governing participation and vesting.  Section 204(g) mandates that any plan amendment not decrease a participant's accrued benefits.  29 U.S.C. § 1054(g).  Section 208 governs

(continued...)

of the spinoff, assets valued at approximately $765 million from its pension plans to
"mirror" pension plans administered by Idearc.  *See* Verizon Brief at 12 n.5.  The
value of these assets was calculated in a manner intended to conform to the complex
Treasury regulations implementing Section 208.  *Id.* at 12.  These regulations work to
ensure that transferees like Idearc will be able to satisfy any pension obligations or
liabilities they assume.  *Id.* at 4-7.  The plaintiffs do not contend that their pension
plan benefits have been diminished or interrupted since their transfer to Idearc's
plans.  Nor do the plaintiffs dispute that the amount of the assets Verizon transferred
was sufficient to conform to ERISA Sections 204(g) and 208.  *See generally* Second
Amended Complaint; *see also generally* Plaintiffs' Memorandum Brief in Support of
Motion for Partial Summary Judgment ("Plaintiffs' Brief") (docket entry 83).  Finally,
the plaintiffs do not dispute that the master trust that holds their pension assets is a
separate entity from Idearc and SuperMedia and was not a part of Idearc's Chapter

---

[2](...continued)
mergers, consolidations, and transfers of plan assets.  29 U.S.C. § 1058.  It requires
that, if such transactions are undertaken, a participant must "receive a benefit
immediately after the merger, consolidation, or transfer which is equal to or greater
than the benefit he would have been entitled to receive immediately before the
merger, consolidation, or transfer (if the plan had then terminated)."  *Id.*  In the brief
supporting their motion for summary judgment, the Verizon defendants helpfully
outline the mechanics of the complex regulations implementing Section 208.  *See*
Verizon Brief at 2-8.  They also review the manner in which Verizon structured the
spinoff of the pension plans to comply with this section.  *Id.* at 11-18.  Because the
plaintiffs never dispute that Verizon complied with these provisions of ERISA, the
court sees no need to engage in a tedious retelling of the mechanics of the pension
plan spinoff.

11 reorganization.  *See* SuperMedia Brief at 5 and Defendant SuperMedia Employee Benefits Committee's Appendix in Support of its Motion for Summary Judgment ("SuperMedia Appendix") at App 3, App 338 (docket entry 84).

The EMA also contained a provision that required Idearc to establish "mirror" welfare benefits plans for its employees and retirees.  *See* Verizon Brief at 15.  The provision specifically required the plans to provide "health, dental, and life insurance" benefits that were "substantially the same as the benefits provided for such employees under the corresponding Verizon Welfare Plan[s]."  *Id.*  The plaintiffs do not dispute that the Idearc plans to which they were transferred provided the same health and welfare benefits as the Verizon plans.  Nor do they dispute that, in the years following the spinoff, they received substantially the same health and welfare benefits they would have received had they been participants in Verizon's plans.  *See generally* Second Amended Complaint and Plaintiffs' Brief.

On December 22, 2006, soon after completing the transactions consummating the spinoff, Verizon enacted amendments to its pension and welfare benefits plans, which it intended to apply retroactively.  Second Amended Complaint ¶¶ 71-72; Verizon Brief at 16-17.  Among the amendments were certain provisions that clarified Verizon's asserted right to terminate the participation of those retirees who had been covered under Verizon-administered plans, but whose liabilities had been transferred to Idearc-administered plans.  *Id.* at 16-17.

On January 25, 2007, Verizon notified certain management retirees, including the plaintiff Palmer, of the changes resulting from the spinoff.  Second Amended Complaint ¶ 73.  The letter clarified that these individuals were now participants in Idearc's pension plans; that the plans were "mirror plans" that provided the same benefits the individuals had been receiving prior to the changes; that, for the time being, Verizon would continue to administer certain aspects of the plans; and that Idearc was in the process of setting up its own administrative processes.  *See* SuperMedia Appendix at App 77-78.  On February 15, 2007, substantially the same letter was sent to a group of non-management retirees that included the plaintiffs Murphy and Noe.  Second Amended Complaint ¶ 75; SuperMedia Appendix at App 79-80.

On March 19, 2007, Idearc sent to individuals affected by the transfer a letter informing them that it would be furnishing them with new "summary plan descriptions" ("SPDs") in the near future and that, until these new SPDs were prepared, Verizon's SPDs, summaries of material modifications ("SMMs"), and the March 19 letter would serve as the participants' SPDs.  SuperMedia Appendix at App 81-84.  Idearc apparently considered this appropriate, since there were no substantive changes to the affected participants' pension or welfare benefits plans as a result of the transfers of liabilities and participants.  *See* SuperMedia Brief at 9-10.

In light of Idearc's deteriorating financial condition, on February 4, 2009 the plaintiffs submitted to both Verizon's and Idearc's employee benefits committees ("EBCs") a letter purporting to make "classwide administrative claims" for benefits allegedly due under the Verizon plans and an ERISA request for plan documents. Second Amended Complaint ¶ 82; Verizon Brief at 19; Appendix in Support of Verizon Defendants' Motion for Summary Judgment ("Verizon Appendix") at 462-70. That letter demanded that the EBCs furnish certain documents containing information about the state of the plaintiffs' pension plans. Verizon Appendix at 462-64, 469-70. It also requested that the EBCs rescind the involuntary transfer of the plaintiffs from Verizon's to Idearc's plans and that the plaintiffs be reinstated in Verizon's plans. *Id.* at 469-70.

On March 3, 2009, Idearc, through its counsel, responded by letter to the February 4, 2009 requests. *See* SuperMedia Appendix at App 350-54; *see also* SuperMedia Brief at 4-5. It provided certain documents that had been requested, indicated that certain other documents were not within its possession and could not be provided by Idearc, and noted that it did not believe the furnishing of the remaining documents was required by ERISA. SuperMedia Appendix at App 350-54. Finally, it noted that further clarification was required regarding the "benefits claim" aspect of the plaintiffs' letter, because it was Idearc's understanding that the plaintiffs were receiving their monthly pension distributions. *Id.* at App 354.

Verizon's Assistant General Counsel Marc Schoenecker ("Schoenecker"), who also served as counsel to VEBC, sent Verizon's initial response letter to the retirees' counsel on February 6, 2009.  Second Amended Complaint ¶ 85.  In that letter, Schoenecker pointed out that the Verizon plan administrator's position was that it did not "recognize class-wide ERISA administrative claims."  *Id.*  On April 21, 2009, Schoenecker indicated that the plan administrators had reversed course, determining to recognize the letter "as a claim for non-disability pension benefits on behalf of each of the clamants."  *Id.* ¶ 88.  In accord with certain ERISA implementing regulations, the letter stated that the administrators were extending the initial 90-day determination period by an additional 90 days.  *Id.*

On July 31, 2009, the Verizon Claims Review Unit ("VCRU") issued a letter which denied in full the plaintiffs' individual and proposed class-wide administrative claims.  Verizon Appendix at 471-83.  On September 15, 2009, the plaintiffs submitted by letter to the Verizon Claims Review Committee ("VCRC") an appeal of the VCRU's initial claim determination.  *Id.* at 484-95.  On November 13, 2009, the VCRC sent to the plaintiffs' counsel a letter indicating that it needed additional time to decide the appeal and that VCRC members would meet in December 2009 for that purpose.  Second Amended Complaint ¶ 99.  Following that meeting, the VCRC sent a letter to the plaintiffs' counsel, dated January 12, 2010, indicating that the

committee had determined at the December meeting to deny the appeal.  Verizon

Appendix at 498-504.

## C.  Procedural History

The plaintiffs Murphy, Noe, and Palmer, individually and on behalf of all

retirees involuntarily transferred from Verizon's to Idearc's pension plans

(collectively, the "plaintiffs"), filed this suit on November 25, 2009 against Verizon

Communications, Inc. ("VCI"), Verizon Employee Benefits Committee ("VEBC"),

Verizon Pension Plan for New York and New England Associates ("VPPNY"),

Verizon Management Pension Plan ("VMPP"), Idearc Employee Benefits Committee,

Idearc Pension Plan for Management Employees, and Idearc Pension Plan for

Collectively Bargained Employees.  *See generally* Complaint.

The plaintiffs amended their complaint on January 6, 2010, adding as a

defendant SuperMedia, Inc. f/k/a Idearc, Inc.  *See generally* Amended Complaint for

Proposed Class Action Relief Under ERISA ("First Amended Complaint") (docket

entry 6).  SuperMedia, Inc. was dismissed without prejudice on February 9, 2010.

*See* Order of February 9, 2010 (docket entry 17).

On March 10, 2010, Idearc Employee Benefits Committee, Idearc Pension

Plan for Management Employees, and Idearc Pension Plan for Collectively Bargained

Employees moved to dismiss the claims against them.  *See* Defendants SuperMedia

Employee Benefits Committee, SuperMedia Pension Plan for Management

Employees, and SuperMedia Pension Plan for Collectively Bargained Employees'

Motion to Dismiss for Plaintiffs' Failure to State a Claim (docket entry 22).  The

court's Memorandum Opinion and Order of October 18, 2010, which granted this

motion in part and denied it in part, dismissed the claims against Idearc Pension Plan

for Management Employees and Idearc Pension Plan for Collectively Bargained

Employees.  *See* Memorandum Opinion and Order of October 18, 2010 at 1 n.1, 10,

27-28 (docket entry 33).

On December 2, 2010, the plaintiffs filed a motion for class certification, *see*

Plaintiffs' Motion for Class Certification (docket entry 42), which the court granted

by its order of March 3, 2011.  *See* Order for Class Certification (docket entry 55).

This order certified a class under FED. R. CIV. P. 23(b)(2), defined as "All former

participants in Verizon's pension plans who were transferred into Idearc's pension

plans in connection with a spin-off transaction occurring in November 2006 and who

were retired or terminated from Verizon at the time of the spin-off, as well as any

beneficiaries of such participants."  *Id.* at 1.

The plaintiffs filed a second amended complaint on June 21, 2011, adding as

defendants Verizon Corporate Services Group Inc. ("VCSG"), Verizon Enterprises

Management Pension Plan ("VEMPP"), and Verizon Pension Plan for Mid-Atlantic

Associates ("VPPMA") (collectively, including the four above-referenced Verizon

entities, "Verizon," or the "Verizon defendants").  *See generally* Second Amended

Complaint.  By this time, Idearc Employee Benefits Committee had become known as
SuperMedia Employee Benefits Committee.

On August 26, 2011, the Verizon defendants and SEBC filed separate motions
for summary judgment.  On the same date, the plaintiffs filed a partial motion for
summary judgment.  These are the instant motions.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is proper when the pleadings, depositions, admissions,
disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of
law."  FED. R. CIV. P. 56(a), (c)(1).[3]  A fact is material if the governing substantive
law identifies it as having the potential to affect the outcome of the suit.  *Anderson v.*
*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is
genuine "if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481,
489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to
merely formal, pretended, or a sham.").

---

[3]       Disposition of a case through summary judgment "reinforces the
purpose of the Rules, to achieve the just, speedy, and inexpensive determination of
actions, and, when appropriate, affords a merciful end to litigation that would
otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190,
1197 (5th Cir. 1986).

The moving party need not actively negate the opponent's claim. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986). The moving party simply must point out an absence of evidence to support the nonmoving party's claim. *Id.* at 325.

At this stage, the court does not weigh the evidence or make credibility determinations; rather, the court merely determines if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 255. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. "'[E]ven in cases where elusive concepts such as motive or intent are at issue,'" summary judgment may be appropriate "'if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.) (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)), *cert. denied*, 513 U.S. 871 (1994).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, the court will only resolve factual controversies in favor of the nonmoving party "when an actual

controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Moreover, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts and "articulate the 'precise manner' in which that evidence support[s] [his] claim." *Celotex*, 477 U.S. at 324; *Forsyth*, 19 F.3d at 1537 (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992)). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

B. <u>Verizon Defendants' Motion for Summary Judgment</u>

The Verizon defendants have moved for summary judgment on all the claims against them in the plaintiffs' second amended complaint, including (1) the plaintiffs' first claim for relief for failure to provide a full and fair review of a denied claim for benefits, (2) the plaintiffs' second claim for relief for failure to disclose summary plan descriptions, (3) the plaintiffs' third claim for relief for engaging in a prohibited transaction, (4) the plaintiffs' fourth claim for relief for breach of fiduciary duty,

(5) the plaintiffs' sixth claim for relief for appropriate equitable relief, and (6) the

plaintiffs' seventh claim for relief for failure to pay benefits due under the Verizon

pension plans.  *See* Verizon Defendants' Motion for Summary Judgment ("Verizon

Motion") at 1 (docket entry 77); *see also* Second Amended Complaint ¶ 2.

### 1.  *Plaintiffs' Fourth Claim for Relief:  Section 404(a)(1) Breach of Fiduciary Duty*

#### a.  Legal Standard

29 U.S.C. § 1104 ("Section 404") is ERISA's fiduciary duty provision.  Section

404(a)(1) sets forth the standards in accord with which "a fiduciary shall discharge

his duties with respect to a plan."  "[T]he threshold question" in ERISA breach of

fiduciary duty cases "is not whether the actions of some person employed to provide

services under a plan adversely affected a plan beneficiary's interest, but whether that

person was acting as a fiduciary (that is, was performing a fiduciary function) when

taking the action subject to complaint."  *Pegram v. Herdrich*, 530 U.S. 211, 226

(2000).  The typical fiduciary functions, as the Court noted in *Pegram*, involve

"decisions about managing assets and distributing property to beneficiaries."  *Pegram*,

530 U.S. at 231.

Thus, the Supreme Court has held that when employers act to amend or

terminate a benefits plan, they do not perform a "fiduciary function" that triggers

fiduciary duties under ERISA.  See *Curtiss-Wright Corporation v. Schoonejongen*, 514

U.S. 73, 78 (1995) (citing *Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th

Cir.), *cert. denied*, 498 U.S. 984 (1990), for the proposition that decisions to terminate or amend benefits plans are not taken in a fiduciary capacity); *Hughes Aircraft Company v. Jacobson*, 525 U.S. 432, 444 (1999) ("In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets.").

Other courts have extended this principle to the actions of merging or consolidating pension plans, or transferring plan assets in a spinoff transaction.  See, *e.g.*, *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1076 (9th Cir. 2009) ("a decision to spin a plan off . . . is not a fiduciary act"), *cert. denied*, 558 U.S. 1111 (2010); *Systems Council EM-3 v. AT&T Corporation*, 159 F.3d 1376, 1379 (D.C. Cir. 1998) ("there has been no showing that AT&T acted in a fiduciary capacity" when it took actions including "amend[ing] its pension and welfare plans and allocat[ing] the assets and liabilities of those plans between AT&T and Lucent"); *Hunter v. Caliber System, Inc.*, 220 F.3d 702, 719 (6th Cir. 2000) ("an employer's decision to transfer plan assets" when spinning off a subsidiary "is not a fiduciary decision"); *Blaw Knox Retirement Income Plan v. White Consolidated Industries, Inc.*, 998 F.2d 1185, 1189 (3d Cir. 1993) (the "decision to sell [corporate divisions] and to transfer . . . pension plans was a business decision not subject to ERISA's fiduciary provisions"), *cert. denied*, 510 U.S. 1042 (1994).

b.  Application

The Verizon defendants argue that the transfers associated with the Idearc

pension plan spinoff fully complied with ERISA's provisions governing transfers of

assets, and nothing more was therefore required of them.[4]  *See* Verizon Brief at 22.

They also assert that "Verizon's decision to transfer the benefit obligations for current

and former VIS employees to Idearc as part of the spinoff transaction was not made

in a fiduciary capacity," and that such a decision therefore cannot support a claim for

breach of fiduciary duty.  *Id.* at 28.  Finally, the Verizon defendants note that the

spinoff was entirely consistent with the terms of the relevant pre-spinoff Verizon

pension plans and that the retroactive December 22, 2006 amendments were

permissible under ERISA.  *Id.* at 22.

The plaintiffs respond that they do not challenge Verizon's bare decision to

transfer the retirees' pension obligations, a decision which the plaintiffs agree is not

one made in a fiduciary capacity.  *See* Plaintiffs' Brief in Support of Plaintiffs'

Opposition to Verizon Defendants' Motion for Summary Judgment ("Plaintiffs'

Verizon Response") at 6 (docket entry 87).  Rather, they argue, their challenge is to

the manner in which the Verizon defendants accomplished that transfer.  Plaintiffs'

---

[4]        This argument is intriguing, and the Verizon defendants cite a number
of persuasive decisions that appear to support it.  *See* Verizon Brief at 23-26.
Ultimately, however, the court is hesitant to rely on a rule that suggests there is no
possibility a plan administrator who fully complied with Section 208 in transferring
plan assets could breach fiduciary duties connected with that transfer.

Verizon Response at 5, 7, 22-23.  Their argument is threefold: first, that the transfer of retirees violated the pension plans' terms and therefore violated the "plan documents rule," *id.* at 7-8; *see also* 29 U.S.C. § 1104(a)(1)(D) ("a fiduciary shall discharge his duties with respect to a plan . . . in accordance with the documents and instruments governing the plan"), and *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285, 300 (2009) (noting that "ERISA provides no exemption from" the duty to act in accordance with plan documents "when it comes time to pay benefits"); second, that the December 22, 2006 amendments to Verizon's plans could not be applied retroactively and so cannot defeat the principle that Verizon violated the plan documents rule in accomplishing the spinoff, *id.* at 13; and third, that the involuntary transfer of retirees was not in the retirees' best interests and thus constituted a breach of the Verizon defendants' fiduciary duty of loyalty, *id.* at 19.

    The core assertion of the plaintiffs' argument that Verizon violated the plan documents rule is that, while Verizon's pension plans permitted transfers of *assets and liabilities*, nothing in the plans permitted the transfer of individual *persons*, like the retirees, from coverage under one plan to coverage under another.  *Id.* at 8.  As shown below, this argument leads to absurd results.  The court thus concludes, as a matter of law, that the pre-November 2006 Verizon pension plans implicitly granted Verizon the authority to transfer participants in its plans to a different plan created as a result

of a transfer of assets or liabilities.[5]  The Verizon defendants therefore did not breach fiduciary duties in connection with the pension plan spinoff by violating the plan documents rule.

The language of the relevant pension plans clearly permitted transfers of assets and liabilities, so long as these were transferred in compliance with ERISA Section 208 and its implementing regulations.  Section 11.3 of the VMPP and the VEMPP stated that portions of the plans' "assets or liabilities may be transferred to another plan" and that "no benefit previously payable under the Plan on account of such liability shall be payable under the Plan following such transfer."  Verizon Appendix at 399-400, 407-08.  Section 20.6 of the VPPNY and the VPPMA also provided that the "assets or liabilities" of the plans may be "transferred to[] any other plan," so long as the transfer complied with Section 208 and the implementing regulations.  *Id.* at 367, 385.

The plaintiffs' assertions (1) that the retirees are "persons" and not "assets" or "liabilities," *see* Plaintiffs' Verizon Response at 8-9, and (2) that no single asset in a defined benefit plan is traced to, or belongs to, a single individual, *id.* at 10, cannot overcome the plain import of these provisions: that the plans implicitly authorize the transfer of persons from one plan to another.

---

[5]    This conclusion obviates the need to consider whether the December 22, 2006 amendments could be validly applied, retroactive to November 17, 2006.

The "liabilities" the Verizon plans' provisions permitted to be transferred were not free-floating abstractions.  They included, quite plainly, liabilities to pay benefits to individuals.  *See* Verizon Appendix at 400 ("[N]o benefit previously payable under the Plan on account of such liability shall be payable under the Plan following such transfer."); *see also, e.g.*, 26 C.F.R. § 1.414(l)-1(o) ("[I]f in accordance with the transfer of one or more employees, a block of assets and liabilities are transferred from Plan A to Plan B, each of which is a defined benefit plan, the transaction will be considered as a spinoff from Plan A and a merger of one of the spinoff plans with Plan B."); 26 C.F.R. § 1.401-2(b)(2) ("The term 'liabilities' as used in section 401(a)(2) includes both fixed and contingent obligations to employees."); 29 U.S.C. § 1002(25) ("The term 'vested liabilities' means the present value of the immediate or deferred benefits available at normal retirement age for participants and their beneficiaries which are nonforfeitable."), (29) ("The term 'accrued liability' means the excess of the present value, as of a particular valuation date of a pension plan, of the projected future benefit costs and administrative expenses for all plan participants and beneficiaries over the present value of future contributions for the normal cost of all applicable plan participants and beneficiaries.").

Any transfer of liabilities from one plan to another, which both ERISA and the Verizon plans clearly permit, makes it necessary for a plan administrator to identify and track which individuals, going forward, the transferor plan will remain liable to

and which individuals the transferee plan will become liable to.  Section 208's

implementing regulations envision, in both the merger and spinoff contexts, just such

a process of identification and tracking of individuals with assets and liabilities.  *See*

26 C.F.R. § 1.414(l)-1(n) ("In the case of a spinoff of a defined benefit plan, the

requirements of section 414(l) will be satisfied if--(i) All of *the accrued benefits of each*

*participant* are allocated to only one of the spun off plans.") (emphasis added),

§ 1.414(l)-1(e) ("Merger of defined benefit plans . . .  If the sum of the assets of all

plans is not less than the sum of the present values of the accrued benefit (whether or

not vested) of all plans, the requirements of section 414(l) will be satisfied merely by

combining the assets and *preserving each participant's accrued benefits*.") (emphasis

added).  The fact that the Verizon plans did not explicitly mention this tracking is of

no moment.

Furthermore, it is absurd to imagine that the Verizon pension plans provided a

mechanism for the splitting of one plan into two via a spinoff transaction that

transferred assets and liabilities, without permitting the plan administrator to transfer

individuals from participation in the first plan to participation in the second.  Indeed,

reading the plans this way would render the transfer provisions a nullity.  Federal

common law rules of contract interpretation, applicable to ERISA plans, dictate

avoiding such a reading.  See *Wegner v. Standard Insurance Company*, 129 F.3d 814,

818 (5th Cir. 1997) (applying federal common law to interpretation of ERISA plan);

*Harris v. The Epoch Group, L.C.*, 357 F.3d 822, 825 (8th Cir. 2004) ("[U]nder federal common law 'a contract should be interpreted as to give meaning to all of its terms-- presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.' ") (quoting *Transitional Learning Community at Galveston, Inc. v. United States Office of Personnel Management*, 220 F.3d 427, 431 (5th Cir. 2000)).   The court thus concludes that the relevant Verizon pension plans implicitly authorized any transfer of individuals from Verizon plans to spunoff plans that was accomplished in accord with Section 208's provisions and implementing regulations.   Since the transfer of retirees was not a violation of plan provisions, the plaintiffs' theory that Verizon violated the plan documents rule cannot support its breach of fiduciary duty claim.

The plaintiffs also propose in passing that the Verizon defendants violated plan provisions, because those provisions allegedly required the unanimous consent of individuals to be transferred in connection with a pension plan spinoff.  *See* Plaintiffs' Memorandum Brief in Support of Motion for Partial Summary Judgment ("Plaintiffs' Brief") at 15-16 (docket entry 83).   For this argument, the plaintiffs point to Section 15.1(b) of both the VPPNY and VPPMA, which stated, "A change or termination shall not affect the rights of any Employee, without his or her consent, to any benefit or pension to which he may have previously become entitled hereunder."  *Id.*; Verizon Appendix at 365, 383.

First, by its terms, Section 15.1(b) applies only to employees, not retirees. Second, the plaintiffs do not -- indeed, cannot -- dispute, given that Idearc instituted mirror plans, that the spinoff transfer changed nothing regarding either the pension or welfare benefits to which they were entitled.  Since their substantive benefits did not change, the plaintiffs' argument boils down to an assertion that one of the "benefits" to which they had become entitled under the plans, at the time of the spinoff, was the right to have a particular corporate entity sponsoring and administering their plans.  This is incorrect.  The plaintiffs have pointed to nothing in the plans' provisions for transfers of assets or liabilities that creates such a benefit. Nor do they point to any other provision of the plans that creates this benefit.

Moreover, as the Verizon defendants note, the reading of Section 15.1(b) the plaintiffs advocate would effectively render the provision in Section 20.6 of the VPPNY and VPPMA a nullity.  *See* Brief in Opposition to Plaintiffs' Motion for Summary Judgment ("Verizon Defendants' Response") at 19-20 (docket entry 93). This is because in a pension plan with as many participants as Verizon's, it would be nearly impossible to obtain unanimous consent to any proposed transfer of assets. Compare, *e.g.*, *Chastain v. AT&T*, 2007 WL 3357516, at *9 (W.D. Okla. November 8, 2007) ("[A]s a practical matter, plaintiffs' theory suggests that liability for welfare benefit plans could never, or almost never, be completely transferable to another plan or entity, because all participants might not consent to a complete

- 24 -

transfer of plan liability."), *aff'd on other grounds*, 558 F.3d 1177 (10th Cir. 2009).  At the very least, a settlor looking forward could never be certain unanimous consent would be forthcoming.  Hence, the settlor would be highly unlikely to include such a provision (in the absence of a mandate from ERISA, to which the plaintiffs have not pointed).  *See* Verizon Defendants' Response at 20.  The court thus concludes that Verizon's pension plans do not require the unanimous consent of affected participants prior to a transfer of assets or liabilities.  This theory, therefore, cannot support the plaintiffs' claim for breach of fiduciary duty.

Aside from the notion that the Verizon defendants breached fiduciary duties by deviating from the pension plans' provisions in transferring retirees, the plaintiffs also apparently argue that an "involuntary" or "surreptitious" transfer of retirees in the context of a pension plan spinoff, *i.e.*, one that takes place in the absence of their consent, is a *per se* breach of the fiduciary duty of loyalty.  *See* Plaintiffs' Brief at 20-27; Plaintiffs' Verizon Response at 19-26.  The plaintiffs cite only one case that comes close to supporting such a theory, *Howe v. Varity Corporation*, 36 F.3d 746 (8th Cir. 1994), *aff'd on other grounds*, 516 U.S. 489 (1996).

The *Howe* panel found a breach of fiduciary duty in an involuntary transfer of retirees from participation in a benefits plan administered by the retirees' former employer to participation in a benefits plan administered by a corporate entity created by the employer to ease its own financial strain.  See *Howe*, 36 F.3d at 756.

There was overwhelming evidence in the case, however, that the newly created entity was financially doomed from the moment of its creation.  *Id.* at 749-50.  Moreover, there was significant evidence that the defendants had affirmatively misled current employees to induce them to voluntarily transfer to coverage under the new entity's pension plans.  *Id.*  Those facts led the court to find breaches of fiduciary duty both with respect to certain employees and also with respect to the involuntarily transferred retirees.  *Id.* at 756.

The plaintiffs' reliance on *Howe* is misplaced for at least two reasons.  First, the egregious facts of that case led the panel to a finding that the defendants had performed certain acts that could be characterized as "fiduciary functions" in the context of the transfers at issue.  *Id.* at 753 ("Plaintiffs' proof here, however, goes beyond mere business decisions on the part of defendants. Misleading communications to plan participants regarding plan administration . . . will support a claim for breach of fiduciary duty.") (internal citations and quotations omitted); *see also, e.g., James v. Pirelli Armstrong Tire Corporation*, 305 F.3d 439, 449 (6th Cir. 2002) ("A fiduciary breaches his duty by providing plan participants with materially misleading information."), *cert. denied*, 538 U.S. 1033 (2003).  Thus, the *Howe* panel was able to distinguish between (1) a business decision to transfer plan assets, which is not a fiduciary function, and (2) affirmative actions the defendants took to induce

- 26 -

employees into volunteering for the transfer by misleading them about the new corporation's financial health.  *Howe*, 36 F.3d at 753.

Underlying *Howe*'s holding with respect to the retirees, then, was the notion that the act of withholding from the retirees information about the new corporation before involuntarily transferring the retirees was an act that could be construed in the same way -- *i.e.*, as an attempt to induce the retirees' acceptance of the transfer by misleading them.  The *Howe* panel could therefore construe this "complete disregard of the rights and interests of beneficiaries" as a fiduciary function.  *Id.* at 756.

Here, the plaintiffs have identified no specific act the Verizon defendants performed, from which a reasonable factfinder could conclude that the Verizon defendants fraudulently induced or otherwise materially misled the retirees into accepting a pension plan transfer for which they did not volunteer.  *See generally* Second Amended Complaint.  Nor have the plaintiffs identified any other similar acts of misconduct that would support a conclusion that the Verizon defendants performed "fiduciary functions" in connection with the spinoff.  *Id.*

Unlike in *Howe*, the plaintiffs here have not pointed to evidence from which a reasonable factfinder could conclude that Idearc was an entity doomed, and known by Verizon to be doomed, from the beginning of its existence.  The mere fact that an entity undergoes a Chapter 11 restructuring two and a half years after it begins its corporate life is not enough to conclude that the entity was fatally flawed, and known

to be so, from the beginning of that life.  *Contra* Plaintiffs' Brief at 24.  And while the plaintiffs also point to observations made by Idearc's future leaders about Idearc's relative financial strength during the planning phase of the spinoff, *see* Plaintiffs' Brief at 25, these observations alone are also wholly insufficient for a reasonable factfinder to conclude Idearc was an entity doomed to fail.

Moreover, since the court has already concluded that the Verizon defendants had the authority under the terms of the pension plans to perform the transfers at issue here, there was no act the Verizon defendants undertook, or even needed to undertake, to induce anyone to consent to a transfer.[6]  Compare, *e.g.*, *Howe* 36 F.3d at 749-50.  That the plan provisions required any transfer of assets or liabilities to comply with ERISA Section 208 was sufficient protection to an affected employee or retiree.  *See* Verizon Appendix at 367, 385, 399-400, 407-08.

And finally, there are facts in the summary judgment record here which were not present in the *Howe* case, namely that (1) in the EMA, Verizon required Idearc to maintain the same level of health and welfare benefits Verizon provided, *see* Verizon Appendix at 276, and (2) Verizon had an agreement with Idearc under which

---

[6]     Indeed, the plaintiffs have not identified any communications to the retirees either pre- or post-spinoff that can be construed as misleading.  The plaintiffs do refer to a decision of Verizon to postpone notification to the retirees until after the spinoff, *see* Second Amended Complaint ¶¶ 157-58, but, in the context of the facts of this case, that decision cannot reasonably be construed as a materially misleading omission.  It was a decision well within the sound business judgment of the plan administrators.

Verizon was required to, and in fact did, assist Idearc for almost a year in administering and maintaining those benefits.  *Id.* at 236, 275, 314-15, 330.

As a final aside, it is also not clear that the *Howe* panel was correct in its holding that a materially misleading statement regarding plan administration, on its own, is a "fiduciary function" supporting a claim for breach of fiduciary duty under ERISA.  Other courts have held that when an administrator makes materially misleading communications about a fund's financial status (especially in SEC filings), it is not performing a fiduciary function.  See, *e.g.*, *Fisher v. JP Morgan Chase & Company*, 703 F.Supp.2d 374, 388 (S.D. N.Y. 2010) ("ERISA's duty to speak truthfully applies only to those who are, in fact, ERISA fiduciaries.") (citing cases), *aff'd*, 469 Fed. Appx. 57 (2d Cir.), *cert. denied*, __ U.S. __, 133 S. Ct. 617 (2012).  Even if the plaintiffs had pointed to evidence indicating an issue of fact that Verizon made materially misleading communications to the retirees (and this court thinks they have not), those communications would fall closer to the *Fisher* holding than the *Howe* holding, because they are more like the generic statements about the prospects of an entity made in *Fisher* than the statements in *Howe,* which were made specifically for the purpose of deceiving employees.  *See* Second Amended Complaint ¶ 196.

Given all of this, a reasonable factfinder could not conclude, on the basis of the summary judgment record, that the Verizon defendants performed any act in the context of the pension plan spinoff that constitutes a fiduciary function.  The court

declines the plaintiffs' invitation to fashion a broader rule holding that "whenever a corporate employer negotiates and carries out either the sale or spinoff of a division or business segment which will include retirees having vested rights to future benefits, the corporate employer's actions . . . implicate fiduciary duties." *See* Plaintiff's Brief at 27.

The dominant rule in the case law therefore governs here: Verizon's implementation of the spinoff of its pension plans and its transfer of certain retirees to the spun-off plans were not fiduciary functions.  The Verizon defendants' motion for summary judgment on the plaintiffs' claim for breach of fiduciary duty in violation of ERISA Section 404(a)(1) is therefore granted.

### 2.  *Plaintiffs' Third Claim for Relief:  Section 406(b) Prohibited Transaction*

### a.  Legal Standard

29 U.S.C. § 1106 ("Section 406") prohibits a fiduciary from engaging in certain transactions between the plan and either a party in interest or a fiduciary. The provisions aim to prevent fiduciaries from either self-dealing or from engaging in transactions that would benefit other parties at the expense of a plan's beneficiaries or participants.  *Reich v. Compton*, 57 F.3d 270, 275 (3d Cir. 1995) ("Congress adopted section 406(a) of ERISA to prevent plans from engaging in certain types of transactions that had been used in the past to benefit other parties at the expense of the plans' participants and beneficiaries."); *Lowen v. Tower Asset Management, Inc.*, 829

F.2d 1209, 1213 (2d Cir. 1987) ("[Section 406(b)] protects beneficiaries by prohibiting transactions tainted by a conflict of interest and thus highly susceptible to self-dealing.").

As an initial matter, it is clear that these provisions apply only to acts performed in a fiduciary capacity. This is because, on their face, the provisions plainly apply only to fiduciaries. 29 U.S.C. § 1106. And the question who is a fiduciary is, as noted above, a question not of identity but of functions being performed. *See* 29 U.S.C. § 1002(21); see also *Hunter*, 220 F.3d at 724 ("[B]y its own terms, § 1106 applies only to those who act in a fiduciary capacity."). Additionally, the circuit courts have widely held that, in the context of a pension plan spinoff, the prohibited transaction provisions are inapplicable, because the plan administrator acting to spin off a plan is not acting in a fiduciary capacity. *Id.*; see also *Flanigan v. General Electric Company*, 242 F.3d 78, 87-88 (2d Cir.), *cert. denied*, 534 U.S. 1065 (2001); *Blaw Knox*, 998 F.2d at 1191. Finally, the Supreme Court has held that an entity "act[s] not as a fiduciary but as a settlor when it amend[s] the terms of [a] Plan." *Lockheed Corporation v. Spink*, 517 U.S. 882, 891 (1996).

b. Application

The Verizon defendants argue that the plaintiffs' Section 406 claim fails automatically, because the weight of authority is so strong that (1) Section 406 only applies to acts performed in a fiduciary capacity, and (2) the decision to spin off an

ERISA plan is not an act performed in a fiduciary capacity. *See* Verizon Defendants'
Brief at 36-37. The plaintiffs argue that the rule in (1) on which the Verizon
defendants rely is narrower than the defendants assert. Plaintiffs' Verizon Response
at 27-29. The plaintiffs admit that it is true that Section 406(a) only applies to acts
performed in a fiduciary capacity. *Id.* at 27. But, they assert, Section 406(b) applies
whether or not the act in question was one undertaken in a fiduciary capacity. *Id.* at
28, 30.

As an initial matter, the plaintiffs' strained argument is foreclosed by the plain
language of the statute. Section 406(b) applies only to a "fiduciary." 29 U.S.C.
§ 1106(b). An entity or person is a "fiduciary," under ERISA's definition, only "to
the extent" that certain fiduciary functions are performed. 29 U.S.C. § 1002(21). If
the entity or person in question is not performing fiduciary functions in connection
with a particular transaction, then the entity is not a fiduciary to whom Section
406(b)'s prohibition applies.[7]  See also *Hunter*, 220 F.3d at 724.

The case law makes abundantly clear, as the plaintiffs admit, that Section
406(a) only applies to acts taken in a fiduciary capacity. *Id.*; *Flanigan*, 242 F.3d at
87; *Blaw Knox*, 998 F.2d at 1191. Not only so, but the language of the cases
examining Section 406(a) is often broad enough to encompass Section 406(b) as well.

---

[7]     This is precisely the line of interpretation the Supreme Court followed
in reaching its conclusion in *Lockheed* that Lockheed was not acting in a fiduciary
capacity with respect to a transaction challenged under Section 406(a). See *Lockheed*,
517 U.S. at 891.

See, *e.g.*, *Hunter*, 220 F.3d at 724 (noting that Section 406 generally "applies only to those who act in a fiduciary capacity" without distinguishing between Section 406(a) and 406(b)).  Thus, there is a wealth of dicta indicating that the rule the Supreme Court articulated in *Lockheed*, 517 U.S. at 891, applies to Section 406(b).  Moreover, there are a number of cases which directly hold that Section 406(b) only applies to those performing fiduciary functions.  See *Systems Council EM-3, International Brotherhood of Electrical Workers, AFL-CIO v. AT&T Corporation*, 972 F.Supp. 21, 29 (D.D.C. 1997) ("For liability to attach, Defendants must have acted in a fiduciary capacity as to each count which charges a violation of § 404 or § 406(a) or (b)."), *aff'd*, 159 F.3d 1376 (D.C. Cir. 1998); *Flanigan*, 242 F.3d at 87 (holding that "[f]iduciary duty and prohibited transaction rules apply only to decisions by an employer acting in its fiduciary capacity" and citing 29 U.S.C. § 1106(b)); *DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 748 (6th Cir. 2010) ("Because [defendant] was not acting in a fiduciary capacity when it negotiated the rate changes at issue in this case, [defendant] did not violate § 1106(b)(2)."); *Chicago District Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 472 n.4 (7th Cir. 2007) ("Carpenters alleged that Caremark violated section 1106(b) when it engaged in certain transactions . . .  Because we find that Caremark was not a fiduciary when it engaged in any of the relevant transactions, we need not address this section

further.").  The plaintiffs have pointed the court to no case directly holding the contrary.

The Verizon defendants' conduct falls comfortably within the ambit of the cases cited above, because the actions of which the plaintiffs complain in connection with their Section 406(b) claim are all actions that were taken in pursuit of amending Verizon's plans to accomplish the spinoff.  *See* Second Amended Complaint ¶¶ 153-63, 166-67, 169-72.  As with the plaintiffs' Section 404 claim (perhaps even more so here), the plaintiffs point the court to no actions of Verizon analogous to the material misrepresentations in *Howe*.  See *Howe*, 36 F.3d at 750; *see also* Second Amended Complaint ¶¶ 153-72.  There is thus nothing before the court to indicate that, in the context of the spinoff, the Verizon defendants performed actions extraneous to the typical settlor functions of amending the plans that would support a holding that they performed some fiduciary function to activate Section 406(b)'s prohibitions.

Because the actions to which the plaintiffs point in connection with the Section 406 claim are all actions taken in pursuit of amending the plans to accomplish the spinoff, there is not evidence before the court sufficient for a reasonable factfinder to conclude that the Verizon defendants performed fiduciary functions that would trigger Section 406(b)'s prohibitions.  The Verizon defendants' motion for summary judgment on the plaintiffs' third claim for relief is granted.

3.  *Plaintiffs' Second Claim for Relief:  Failure to
Make Required Disclosures*

a.  Legal Standard

ERISA's reporting and disclosure requirements include a provision, 29 U.S.C.

§ 1022 ("ERISA Section 102"), which mandates that a summary plan description

("SPD") be furnished to a plan's participants and beneficiaries, containing certain

disclosures and information about the plan.  Among the disclosures the provision

requires an administrator to make via SPD are the "circumstances which may result

in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. § 1022(b).

b.  Application

Both the plaintiffs and the Verizon defendants rely heavily on plain language

readings of the provision at issue, probably due to the fact that there is a relative

dearth of case law interpreting it.  *See*, *e.g.*, Plaintiff's Brief at 5-9, and Verizon

Defendants' Brief at 39-42.  The plaintiffs point to the fact that the relevant SPDs

did not contain language indicating that a spinoff resulting in an involuntary transfer

from one pension plan to another was a "circumstance[] which may result in . . .

denial or loss of benefits."  *See* Plaintiffs' Brief at 5, Plaintiffs' Verizon Response at

33.  The Verizon defendants argue, first, that the transfer was not a circumstance

which resulted in denial or loss of benefits, because the benefits the new plans

contemplated were equal to the previous benefits the plaintiffs had received.  *See*

Verizon Defendants' Brief at 39-40.  Second, the defendants assert that a plan

administrator is not required to foresee and disclose every conceivable eventuality via an SPD. *Id.* at 40. Here, the Verizon defendants argue, it is enough that there was a "reservation of rights" provision in the SPDs, which put participants and beneficiaries on notice that Verizon could amend or terminate the plans at any time. *Id.* Since the spinoff did in fact result in an "amendment" to the existing Verizon plans, that reservation of rights provision contains sufficient disclosure to satisfy Section 102. *Id.* at 40-41.

The court cannot accept the defendants' argument that the transfer of retirees was not a circumstance which "may" result in denial or loss of benefits. Quite evidently, the transfer presented a possible circumstance which could result in a loss of benefits, because SuperMedia had the right to amend its health and welfare benefits plans and cause the retirees to lose benefits they might have retained under the Verizon plans. The defendants try to dodge this plain reading of Section 102's language by arguing for, in effect, a *per se* rule that plan amendments are not, for Section 102 purposes, circumstances which result in denied benefits. *See* Verizon Defendants' Brief at 40. The court is not persuaded by the Verizon defendants' hypertechnical reading.

The court does, however, agree with the defendants that the reservation of rights provision constitutes sufficient notice to the plan's beneficiaries that a situation like a spinoff, which results in an amendment of the plan, could lead to a denial or

loss of benefits. *Id.* at 41.  There is case law supporting this notion.  See, *e.g.*, *Fischer v. Philadelphia Electric Company*, 994 F.2d 130, 135 (3d Cir.) ("An ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plan."), *cert. denied*, 510 U.S. 1020 (1993); *Flanigan*, 242 F.3d at 84-85 ("[W]e do not require an ERISA fiduciary to be perfectly prescient as to all future changes in employee benefits.") (internal quotations and citations omitted).

Moreover, while the court recognizes that the standard by which an SPD's language is judged is that of an "average plan participant," *see* 29 U.S.C. § 1022(a) ("The summary plan description . . . shall be written in a manner calculated to be understood by the average plan participant."), it is at least slightly disingenuous for the plaintiffs to assert that a spinoff resulting in a transfer of participation is not a "scenario" that "can be envisioned" in this context.  *See* Plaintiffs' Brief at 6.  During the course of their own retirement, the named plaintiffs had experienced multiple cosmetic pension plan changes that were the result of the mergers that eventually created Verizon.  *See* Verizon Defendants' Brief at 18.  And while a merger is a different transaction mechanically than a spinoff, the mere fact that the plaintiffs here were participants in a Fortune 50 pension plan should have been enough to put them on notice that certain corporate transactions might work changes in the administration of their pension plans.  The same is true of the "average plan participant" in a plan sponsored by a corporate entity like Verizon.

- 37 -

Because the court concludes that the Verizon pension plans' SPDs contained sufficient disclosure of circumstances that could result in denial or loss of benefits, the Verizon defendants' motion for summary judgment on the claim that they violated Section 102 is granted.

### 4. *Plaintiffs' First Claim for Relief: Failure to Provide Full and Fair Review*

#### a. Legal Standard

29 U.S.C. § 1133(2) mandates that an employee benefit plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." While the "full and fair" review provision applies to all denied claims for benefits, it is clear from the face of the statute that, in order to merit full review, the denied claim must indeed have been one "for benefits." Thus, where a participant merely challenges the manner in which benefits have been provided, the full and fair review provision is inapplicable. See *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1457 (10th Cir. 1991) (holding that the mode or manner of payment of benefits is not mandated by ERISA, absent specific plan language providing for it).

#### b. Application

The plaintiffs' complaint insists that its February 4, 2009 "class-wide administrative claim for benefits" was not a challenge to "the mode or manner in which . . . pension benefits are being paid." Second Amended Complaint ¶ 118. The

court disagrees.  A challenge to the identity of the payor and administrator of benefits is a challenge to something peripheral to the substantive benefits themselves, akin to a challenge to the mode or manner in which benefits are paid.  Nothing in the plaintiffs' first claim for relief suggests that the plaintiffs presented to the relevant Verizon administrator a claim for a "benefit" that had been contractually promised to the plaintiffs while they were participants in either Verizon's or SuperMedia's (or Idearc's) plans.  *See generally* Verizon Appendix at 462-70.  Indeed, the confusion in the response of Idearc's counsel to the classwide administrative claim betrays the difficulty of conceiving the plaintiffs' February 4 letter as a claim for "benefits."  *See* SuperMedia Appendix at App 354.

ERISA nowhere mandates that a particular administrator pay a participant's benefits, whether accrued or not.  In addition, as explained above, the notion that the identity of the administrator of the plaintiffs' benefits was itself a "benefit" provided under the Verizon plans is unsupported by any of the plaintiffs' arguments or evidence.  *See above* at 24.  The plaintiffs have pointed to no provision of the Verizon plans indicating that one of the plans' benefits was a right to a particular administrator or payor.  Thus, despite Verizon's July 31, 2009 "denial" of the plaintiffs' February 4, 2009 classwide administrative claim, it is evident that no claim for a "benefit" was ever denied.  In the absence of such a denial, the procedures in

Section 503 are simply inapplicable to Verizon's conduct.  See *Woolsey*, 934 F.2d at 1457.

The court concludes that the plaintiffs' challenge to the identity of the administrator and payor of their benefits, *see* Second Amended Complaint ¶¶ 117-18, was a challenge to the manner in which benefits were being paid.  Given that nothing in ERISA or Verizon's plans mandated a particular payor, ERISA's full and fair review provision, and its implementing regulations, do not apply to the Verizon defendants' review of the plaintiffs' classwide administrative claim.  The Verizon defendants' motion for summary judgment on the plaintiffs' first claim for relief is granted.

5.  *Plaintiffs' Seventh Claim for Relief:  Failure to
Provide Benefits Due Under VPP*

a.  Legal Standard

29 U.S.C. § 1132 ("Section 502") states in relevant part that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

In *CIGNA Corporation v. Amara*, the Supreme Court clarified the type of relief that is available under Section 502(a)(1)(B).  See generally *CIGNA Corporation v. Amara*, __ U.S. __, 131 S. Ct. 1866 (2011).  That relief, according to the Court, does not include reformation of the terms of a pension plan.  *Id.* at 1876-77.  As the Court noted, a plain reading of the section shows that it permits enforcement of pension

plan terms as written, but not the additional step of changing those terms under equitable principles. *Id.*

### b. Application

The defendants argue that the court cannot grant the remedy of reinstatement in the Verizon plans, which the plaintiffs request in their seventh claim for relief, because Section 502(a)(1)(B) does not authorize the court to reform the Verizon pension plans' terms. *See* Verizon Defendants' Brief at 42. The terms of those plans currently exclude individuals like the plaintiffs from coverage. *Id.* at 42-43. Hence the court would have to strike those terms in order to grant the relief the plaintiffs request. *Id.*

The plaintiffs assert in response that they do not seek a reformation of pension plan terms. *See* Plaintiffs' Verizon Response at 41. Rather, they argue that they seek to enforce the terms of the Verizon plans as they existed prior to the (in the plaintiffs' view invalid) December 22, 2006 amendments to those plans, amendments which finally explicitly authorized the transfer of retirees in conjunction with the spinoff. *Id.*

Before the court wades into the details of the plaintiffs' convoluted argument, *id.* at 41-43, the court notes that it has already held that the Verizon plans (even pre-December 22, 2006) implicitly authorized the transfer of retirees that was accomplished in the spinoff. *See above* at 19-20. Thus, "enforcement" of those pre-

December 22, 2006 plans would do nothing to satisfy the plaintiffs' claims here, because at every step the Verizon defendants were entitled to change them in such a way that individuals like the plaintiffs would no longer be entitled to benefits thereunder.

Even if this were not the case, though, the plaintiffs' argument would fail. Since the plaintiffs' argument is extremely difficult to understand, the court will attempt to view it stated several different ways. First, if the plaintiffs' argument is that they are entitled to benefits under the current Verizon plans, then it fails. The argument, stated this way, is defeated by the plain language of Section 502(a)(1)(B), as construed in *Amara*. The language of Section 502(a) permits a participant to bring an action to recover benefits "under the terms of *his* plan." 29 U.S.C. § 1132(a)(1)(B) (emphasis added). The plaintiffs' plans are currently SuperMedia plans, not Verizon plans. In order to render an individual plaintiff here a participant in a Verizon plan, such that the Verizon plan would become "*his* plan," the court would have to amend the currently operative Verizon plans. *Amara* does not permit this, at least not under Section 502(a)(1)(B). *Amara*, 131 S. Ct. at 1877.

If, on the other hand, the plaintiffs' argument is that Verizon failed to pay benefits due prior to December 22, 2006, this court can find no allegation supporting that argument. What amount is due? How did the plaintiffs earn a right to that amount?

- 42 -

If, from yet another perspective, the argument is that the plaintiffs had a vested right to remain participants in Verizon pension plans (and thus a vested right to ongoing benefits under those plans), that argument fails, for reasons stated above. *See above* at 19-20.  The pre-December 22, 2006 Verizon plans permitted the transfers under consideration here (of assets, liabilities, *and* participants), thus the plaintiffs could not have had a vested right to remain participants in them permanently.  In the court's opinion, this exhausts the sensible readings of the plaintiffs' seventh claim for relief, none of which raise a genuine issue of material fact.

The Verizon defendants' motion for summary judgment on the plaintiffs' seventh claim for relief is therefore granted.

### 6.  *Plaintiffs' Sixth Claim for Relief:  Appropriate Equitable Relief*

The plaintiffs' sixth "claim" for relief is a free-floating claim for appropriate equitable relief under ERISA Sections 502(a)(2) and (a)(3).

29 U.S.C. § 1132(a)(2) permits a participant to bring an action for "appropriate relief under section 1109 of this title."  29 U.S.C. § 1109 contains one of ERISA's breach of fiduciary duty provisions (the other being in 29 U.S.C. § 1104). Because the court has determined that the plaintiffs have not shown a genuine dispute of material fact that the Verizon defendants breached fiduciary duties in connection with the pension plan spinoff, the plaintiffs' sixth claim under Section 502(a)(2) fails as a matter of law.

29 U.S.C. § 1132(a)(3) permits a participant to bring an action to redress violations of the provisions of ERISA or of a plan, or to enforce the provisions of ERISA or a plan.  Because the court has determined that the plaintiffs have not shown a genuine dispute of material fact that Verizon violated any provisions of ERISA or its plans in connection with the spinoff, Section 502(a)(3) does not provide any ground for the court to award the plaintiffs equitable relief in connection with their claims.

Since there is no ground for awarding the plaintiffs appropriate equitable relief under Sections 502(a)(2) or (a)(3), the Verizon defendants' motion for summary judgment on the plaintiffs' sixth claim for relief is granted.

## C.  SEBC's Motion for Summary Judgment

The defendant SEBC has moved for summary judgment on all the claims against it in the plaintiffs' second amended complaint.  *See* SuperMedia Brief at 1-2. These include claims of failure to provide the plaintiffs with a full and fair review of a claim for benefits, failure to disclose summary plan descriptions, and equitable relief. Second Amended Complaint ¶ 2.

### 1.  *Plaintiffs' First Claim for Relief:  Failure to Provide Full and Fair Review*

The court has already set forth the relevant legal standards governing this claim in connection with its discussion of the Verizon defendants' motion for summary

judgment.  *See above* at 38-39.  The court will thus proceed to its consideration of the parties' arguments.

The plaintiffs allege in their complaint that SEBC failed to provide a full and fair review of their "classwide administrative claim," which requested that the involuntary transfer be undone and that they be reinstated in Verizon's pension plans.  Specifically, they allege (1) that SEBC "completely refused to make a determination on Plaintiffs' internal administrative claim," Second Amended Complaint ¶ 105, (2) that "Plaintiffs' attempted . . . claim should have been treated by SuperMedia EBC as one arising under ERISA Section 502(a)(1)(B)," *id.* ¶ 117, and (3) that SEBC should have rendered "a determination or clarification of their 'rights to future benefits under the terms of the plan[s].'"  *Id.*

SEBC's argument is simple.  It asserts that, since the plaintiffs were not denied any benefits under SuperMedia's plans, the ERISA full and fair review provision in 29 U.S.C. § 1133(2) was never triggered.  *See* SuperMedia Brief at 1, 7-8.  It also implicitly argues that the plaintiffs' "administrative claim" is not the kind of "claim for benefits" that triggers the two-step process of response and review required by § 1133.  *Id.* at 8-9.

The plaintiffs respond, confusingly, that ERISA Section 502(a) required SuperMedia to render a decision clarifying their rights to future benefits.  *See* Plaintiffs' Brief in Support of Plaintiffs' Opposition to SuperMedia EBC's Motion for

Summary Judgment ("Plaintiffs' SuperMedia Response") at 7-8 (docket entry 89). This argument is bizarre and incorrect. Section 502 sets forth the types of *civil actions* participants and others are entitled to bring under ERISA. *See* 29 U.S.C. § 1132(a). That section has nothing to do with administrative review under 29 U.S.C. § 1133, and it certainly does not require a plan administrator to render the kind of declaratory judgment a federal court may render in connection with a civil suit under Section 502.

The court agrees with SEBC's argument. In order to "grant" the plaintiffs' classwide administrative claim, the only action SEBC could have taken would have been to terminate the plaintiffs' participation in the SuperMedia (at the time, Idearc) plans. *See* Second Amended Complaint ¶ 117-18, 122. It is highly unlikely that the Idearc plan administrators had any authority to unilaterally reinstate the plaintiffs in Verizon's pension plans. Certainly the plaintiffs have pointed to no plan provisions granting Idearc's administrators such authority. The decision to reinstate the plaintiffs in Verizon's plans was a decision Verizon's administrators would have had to make. Thus, the only "claim" before SEBC in the plaintiffs' February 4, 2009 letter was a claim for termination of the plaintiffs' participation in SuperMedia's plans. The court concludes, for the following reasons, that such a claim is not a "claim for benefits under the plan" that triggers § 1133's two-step response and review procedure. *See* 29 U.S.C. § 1133(1).

The question is the meaning of the phrase "benefits under the plan" in § 1133(1).[8] *See id*. The terms "benefit" and "benefits" are not statutorily defined. *See generally* 29 U.S.C. § 1002. It is, of course, true that the term "benefit," when understood as a "legal benefit," is quite broad and encompasses a variety of types of "profit" or "gain." *See* Black's Law Dictionary 178 (9th ed. 2009). Nevertheless, scouring ERISA's other defined terms for references to "benefit" or "benefits" convinces the court that the terms have a narrower meaning in both ERISA's statutory scheme considered as a whole and in the provisions at issue in § 1133.

That narrower meaning emerges in the first two definitions in § 1002, the definitions of an "employee welfare benefit plan" and an "employee pension benefit plan." 29 U.S.C. § 1002(1)-(2). A "welfare benefit plan" is a "plan, fund, or program . . . maintained for the purpose of providing," among other things "medical, surgical, or hospital care or *benefits*, or *benefits* in the event of sickness, accident, disability, death or unemployment, or vacation *benefits*." 29 U.S.C. § 1002(1) (emphasis added). An "employee pension benefit plan" is one that either "provides retirement income" or "results in a deferral of income." 29 U.S.C. § 1002(2). In the latter case, the definition clarifies that it is a pension plan "regardless of the method of calculating the contributions made to the plan, the method of calculating the *benefits*

---

[8]      The plaintiffs' claim focuses on the full and fair review provision in § 1133(2), but an administrator's duty to comply with that provision is not triggered until a claim for benefits has been denied under § 1133(1). *See* 29 U.S.C. § 1133.

under the plan or the method of distributing *benefits* from the plan." *Id.* (emphasis added).

In each instance in the definitions section and elsewhere in the statutory scheme considered broadly, references to "benefits" are intimately connected to the notion of either specific payments or rights to payment that arise out of participation in a plan. *See, e.g.,* 29 U.S.C. § 1002(22)-(23), (25), (28)-(29), (31), (34)-(36). This notion is not broad enough to encompass the plaintiffs' suggestion-by-implication here - that their February 4, 2009 administrative claim for termination from participation in Idearc's plans was a claim for "benefits under the plan."

Because the plaintiffs have not shown a genuine dispute of material fact that they made a claim for "benefits under the plan" that triggered SEBC's duty under § 1133 to respond and review, SEBC's motion for summary judgment on the plaintiffs' first claim for relief against it is granted.

2.   *Plaintiffs' Fifth Claim for Relief:  Failure to Timely Provide SPDs*

a.  Legal Standard

29 U.S.C. § 1024(b)(1)(A) requires plan administrators to "furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in § 1022(a)(1) . . . within 90 days after he becomes a participant."  The implementing regulation also requires the SPD to be provided "on or before the later of . . . [t]he

date which is 90 days after the employee becomes a participant." 29 C.F.R. § 2520.104b-2(a)(1).

It is a generally held principle that, to justify relief, technical violations of ERISA's reporting provisions must be accompanied by a showing of active concealment or detrimental reliance. See *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 926 (5th Cir. 1995) (citing *Godwin v. Sun Life Assurance Company*, 980 F.2d 323, 328 (5th Cir. 1992) ("There is no requirement that the Plan prove actual notice of an amendment absent a showing of active concealment or some significant reliance upon, or prejudice resulting from the lack of notice.")).

### b.  Application

SEBC argues that the undisputed facts show no active concealment, as (1) Verizon disclosed the existence of the transfers to the retirees within the reporting period by its letters dated January 25 and February 15, 2007, and (2) SuperMedia disclosed to the retirees the pertinent details of the new SPD's within a short time after the notice period contemplated by § 1024(b)(1)(A) expired (calculated from the date of the spinoff). *See* SuperMedia Brief at 9-10, 12. It also argues that the plaintiffs did not make in their complaint any allegations of detrimental reliance. *Id.* at 10-12. Finally, SEBC argues that the mandated notice period that ought to apply in a spinoff context is the 210-day period set forth in § 1024(b)(1)(B). *Id.* at 10.

The plaintiffs respond that detrimental reliance can be found in the fact that SEBC's failure to comply with the 90-day deadline slowed their ability to formulate a strategy (particularly a litigation strategy) in response to the pension plan transfer. *See* Plaintiffs' SuperMedia Response at 15-16. They also assert that, because they only request declaratory relief in their complaint, the cases SEBC cites for the general principle that a showing of active concealment or detrimental reliance is necessary to justify relief are inapplicable. *Id.* at 16-18.

In reply, SEBC asserts that the harm the plaintiffs have identified (delay in their ability to formulate an appropriate litigation strategy) is too generic to support an award of relief. *See* Defendant SuperMedia Employee Benefits Committee's Reply Brief in Support of its Motion for Summary Judgment ("SuperMedia Reply") at 4 (docket entry 97).

Without deciding whether a 90-day period or 210-day period applies to a plan administrator's requirement to furnish an SPD in the context of a pension plan spinoff, the court agrees with SEBC that the plaintiffs (1) are required to show active concealment or detrimental reliance, and (2) that the plaintiffs have not made a sufficient showing of either of these such as to justify an award of relief here.

First, in spite of the plaintiffs' strident insistence that the requirement to show detrimental reliance should not be imposed on them because they seek only "equitable relief," *see* Plaintiffs' SuperMedia Response at 16-18, the court is not

convinced.  Not only have the plaintiffs cited no case supporting this assertion, *id.*,
they have presented no argument to demonstrate that their request for declaratory
judgment should be considered "equitable" in this context.  See *Gulf Life Insurance
Company v. Arnold*, 809 F.2d 1520, 1523 (11th Cir. 1987) (noting that the
determination whether a particular declaratory judgment claim is equitable or legal
hinges on examining "the basic nature of the issues involved to determine how they
would have arisen had Congress not enacted the Declaratory Judgment Act.")
(citations and quotations omitted).

 Moving to the question whether the plaintiffs have made a sufficient showing
of detrimental reliance, the court agrees with SEBC that the plaintiffs' vague
assertions of harm (which appear for the first time in their response to the motion for
summary judgment, *see generally* Second Amended Complaint ¶¶ 209-221) are both
unpersuasive and insufficient.  At the earliest, SuperMedia would have been required
by § 1024 to furnish new SPDs to the plaintiffs on February 15, 2007, which was 90
days from the spinoff date of November 17, 2006.  The plaintiffs received notice of
what the contents of their new SPDs would be on March 19, 2007, barely a month
later.  *See* SuperMedia Appendix at App 3, 81-332.  Certainly this delay had no
impact on the statute of limitations, and the defendants here have raised no such
defense.  The plaintiffs do point to the affidavits of the named plaintiffs asserting
that, if they had been provided SPDs within the required period, they "would have

sooner taken a different course of legal action against the defendants." *See* Plaintiffs'
SuperMedia Response at 16.  These affidavits are self-serving and unconvincing,
however, given that the plaintiffs already had notice from Verizon, via the
January 25, 2007 and February 15, 2007 letters, of the transfers.  This "scintilla" of
evidence is not enough to withstand a motion for summary judgment.  See *Anderson*,
477 U.S. at 252.

Because the plaintiffs have not shown any genuine dispute of material fact that
there was active concealment or detrimental reliance connected with SEBC's failure
to timely provide SPDs to them after the spinoff, SEBC's motion for summary
judgment on the plaintiffs' fifth claim for relief is granted.

3.  *Plaintiffs' Sixth Claim for Relief:  Other Appropriate Equitable Relief*

For substantially the same reasons set forth in Section II.B.6 above, SEBC's
motion for summary judgment on the plaintiffs' sixth claim for relief is granted.

D.  Plaintiffs' Motion for Partial Summary Judgment

The plaintiffs have moved for partial summary judgment on some of the claims
in their second amended complaint, including (1) the plaintiffs' second claim for
relief for VEBC's failure to provide required disclosures in SPDs, (2) the plaintiffs'
third claim for relief for VEBC's participation in a transaction adverse to the
plaintiffs' interests, (3) the plaintiffs' fourth claim for relief for VEBC's breach of
ERISA fiduciary duties, and (4) the plaintiffs' sixth claim for appropriate equitable

relief against VEBC and SEBC.  Plaintiffs' Brief at 3.  For the reasons stated above, the court has determined to grant the Verizon defendants' and SEBC's motions for summary judgment on these claims.  The plaintiffs' motion for partial summary judgment is therefore denied.

### III.  CONCLUSION

For the reasons stated above, the Verizon defendants' and SEBC's motions for summary judgment are **GRANTED**.  The plaintiffs' motion for partial summary judgment is **DENIED**.

Judgment will be entered for the defendants.

**SO ORDERED**.

September 16, 2013.

_____
A. JOE FISH
**Senior United States District Judge**

- 53 -